**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CFL TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| OSRAM SYLVANIA, INC. and LEDVANCE, LLC, | |
| Defendants. | |

**COMPLAINT**

This is an action for patent infringement in which Plaintiff, CFL Technologies LLC ("CFLT"), complains against the Defendants, Osram Sylvania, Inc. ("OSI") and Ledvance, LLC ("Ledvance") (collectively, "Defendants"), as follows:

**NATURE OF THE CASE**

1.      This patent infringement case, in part, includes assertions of patents previously asserted against products of at least one of the Defendants.  Prior enforcement efforts did not reach the merits of the issue whether currently-accused products infringe any currently-asserted patents.  This case also depends, in part, on an assertion that certain prior determinations adverse to some of the asserted patents no longer hold any force, based on a sea change in legal standards.  Under contemporary legal standards, no prior determination of patent unenforceability has issue preclusion or claim preclusion effect here.

## PARTIES

### Plaintiff CFL Technologies LLC

2.    Plaintiff CFLT is an Illinois limited liability company, with a principal place of business located at 222 Merchandise Mart Plaza, Suite 1225, Chicago, Illinois  60654.

3.    CFLT is the assignee of U.S. Patent Nos. 6,459,213 ("the '213 Patent," attached as Exhibit 1), 6,172,464 ("the '464 Patent," attached as Exhibit 2), 5,757,140 ("the '140 Patent," attached as Exhibit 3), 5,510,681 ("the '681 Patent," attached as Exhibit 4) and 5,510,680 ("the '680 Patent," attached as Exhibit 5) (collectively, "the patents-in-suit").

4.    Each patent-in-suit generally relates to circuitry used in screw-in compact fluorescent lamps ("CFLs"), such as the type of fluorescent light bulbs commonly used with ordinary household lamp sockets.

5.    The inventor listed on, and original owner of, each patent-in-suit was Ole K. Nilssen ("Nilssen").

6.    Nilssen died on October 10, 2012.

7.    On or around June 15, 2018, CFLT acquired 100% ownership in each of the patents-in-suit, including the right to bring patent enforcement actions for damages accruing prior to June 15, 2018.

8.    Assignment to CFLT of ownership of all patents-in-suit was recorded with the United States Patent & Trademark Office ("PTO") on or around June 19, 2018.

### Defendant Osram Sylvania, Inc.

9.    Defendant OSI is a Delaware corporation with headquarters in Wilmington, Massachusetts.

10.    OSI may be served in Delaware via its registered agent for service of process: Corporation Creations Network Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, Delaware  19810.

11.    OSI and/or one or more of its wholly-owned subsidiaries (or other affiliate(s)) has been in the business of making, marketing and selling CFLs.

12.    OSI has marketed CFLs under the "Sylvania" trade name.

### Defendant Ledvance, LLC

13.    Defendant Ledvance is a Delaware limited liability company with headquarters in Wilmington, Massachusetts.

14.    Ledvance may be served via its registered agent for service of process:  Corporation Creations Network Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, Delaware  19810.

15.    Ledvance was formed as a Delaware limited liability company on or around November 12, 2015.

16.    At the time of Ledvance's formation, Ledvance was a wholly-owned subsidiary of OSI.

17.    On or around July 1, 2016, Ledvance acquired all, or substantially all, of the assets and personnel which constitute the lamps business of OSI, including all, or substantially all, of the assets and personnel related to OSI's business of making, marketing and selling CFLs.

18.    Effective on or around March 1, 2017, OSI divested itself of ownership of Ledvance.

19.    Ledvance has marketed and sold CFLs under the "Sylvania" trade name, both before and after OSI's divestiture of its Ledvance subsidiary.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

20.   This action arises under the patent laws of the United States, Title 35 of the United States Code, including 35 U.S.C. §§ 271(a), 281 and 284-85.

21.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### Personal Jurisdiction

22.   Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process, due at least to its substantial business in this forum, including: (a) at least a portion of the infringements alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods provided to individuals in this Judicial District.

23.   Moreover, each Defendant is organized under the laws of Delaware.

24.   Additionally, Defendants' "Sylvania"-branded CFLs have been sold through numerous retailers located in this Judicial District, such as Lowe's Companies, Inc.

### Venue

25.   Venue is proper in this District, at least under 28 U.S.C. 1400(b), because OSI is a Delaware corporation and Ledvance is a Delaware limited liability company.

### ADDITIONAL BACKGROUND REGARDING
### THE ACCUSED PRODUCTS AND PATENTS

### Common Infringement Activities by Defendants

26.   Each Defendant has, by way of non-limiting example, sold a CFL model described as "Sylvania 29490 23-Watt CFL Mini Twist Light Bulb" ("Sylvania Sample CFL").

27.     The Sylvania Sample CFL has been marketed and/or sold by OSI and/or one of its affiliated companies (including, but not limited to, Ledvance) prior to OSI's divestiture of Ledvance.

28.     The Sylvania Sample CFL has been marketed and/or sold by Ledvance following OSI's divestiture of Ledvance.

29.     All, or substantially all, CFLs sold by Defendants possess many of the same features as the Sylvania Sample CFL, including, but not limited to:

a.      Circuitry housed within a compact structure;

b.      The compact structure being integrally connected with a gas discharge lamp and a base adapted to be screwed into an Edison-type lamp socket;

c.      Base terminals in the screw-base for receiving a relatively low (approximately 60 Hz) alternating power line voltage of the type provided by ordinary household power outlets;

d.      The circuitry including a rectifier having:  (1) rectifier input terminals for receiving the low frequency alternating voltage from the base terminals; and (2) rectifier output terminals for providing a DC supply voltage;

e.      The circuitry including a half-bridge inverter (including two series-connected transistors) having:  (1) inverter input terminals for receiving the DC supply voltage; and (2) inverter output terminals for providing a high frequency inverter alternating voltage (generally in the range of 20 kHz to 60 kHz);

f.      The high frequency inverter alternating voltage being either substantially square or trapezoidal in shape;

g.      The circuitry including a ballasting output circuit for:  (1) receiving the high frequency inverter alternating voltage; and (2) providing an alternating output voltage to lamp terminals of the gas discharge lamp;

h.      The ballasting output circuit including an L-C circuit; and

i.      The alternating output voltage being substantially sinusoidal in shape.

30.     Each feature in the immediately preceding paragraph is disclosed by one or more of the patents-in-suit, and, accordingly, CFLT intends to take discovery related to the circuit, operation and sales of every CFL sold by Defendants during the relevant time periods.

**Defendants' Notice of Nilssen's CFL-Related Patents**

31.     GTE Service Corporation ("GTE") was a predecessor and/or affiliate of OSI.

32.     On or around November 1, 1990, Robert F. Hargest (then an attorney with Witherspoon & Hargest) sent a letter to Carlo S. Bessone (then a patent agent in the Intellectual Property Law Department of GTE) ("Hargest Letter").

33.     The Hargest Letter concerned a prior art search requested by Bessone with respect to U.S. Patent No. 4,857,806 to Nilssen ("the '806 Patent").

34.     The '806 Patent has claims (e.g., claim 1) drawn to CFLs.

35.     On or around May 28, 1996, Nilssen sent a letter to Joseph S. Romanow (then Senior Counsel, Intellectual Property for Osram Sylvania, Inc.), referring to prior communications between Nilssen and Romanow and accusing Osram CFLs of infringing U.S. Patent Nos. 5,233,270 to Nilssen ("the '270 Patent") and U.S. Patent No. 5,343,123 ("the '123 Patent").

36.  On or around June 10, 1996, Nilssen sent a letter to Romanow, referring to the '806 Patent and U.S. Patent No. 5,341,067 to Nilssen ("the '067 Patent") and accusing Osram CFLs of infringing the '806 and '067 Patents ("June 10, 1996 Nilssen Letter").

37.  Romanow responded to the June 10, 1996 Nilssen Letter acknowledging Nilssen's "patented claims, which Osram Sylvania's compact screw-in fluorescent lamp appears to infringe."

38.  On or around June 28, 1996, Nilssen sent Romanow an infringement analysis for the '067 Patent.

39.  On or around February 20, 1997, Nilssen sent a letter to Romanow, referring to the '680 Patent and accusing Osram CFLs of infringing, *inter alia*, claim 9 of the '680 Patent.

40.  On or around August 19, 1997, Nilssen sent a letter to Osram referring to the '680 and '681 Patents and accusing Osram of infringing, *inter alia*, claim 12 of the '681 Patent.

41.  On or around October 22, 1997, Nilssen sent Osram a patent infringement analysis for the '680 Patent, including a patent infringement analysis for, *inter alia*, claim 9 of the '680 Patent.

42.  On or around August 1, 2000, Nilssen filed suit against Osram in the United States District Court for the District of Delaware, alleging, *inter alia*, infringement by Osram of the '806, '270, '067, '123, '680 and '681 Patents.

43.  On or around May 6, 2003, Nilssen filed suit against Osram in the United States District Court for the Northern District of Illinois, alleging, *inter alia*, infringement by Osram of the '140 and '464 Patents.

**Prior Determinations Regarding The Enforceability Of Certain Patents-in-suit**

44.     On July 5, 2006, during litigation captioned *Nilssen et al. v. Osram Sylvania, Inc. et al.* (case no. 01-C-3585, N.D.Ill.) ("*Osram I* Litigation"), the district court found the '681, and '680 Patents to be unenforceable on grounds of inequitable conduct ("*Osram I* Decision").

45.     On October 10, 2007, the Court of Appeals for the Federal Circuit affirmed the *Osram I* Decision holding the '681 and '680 Patents to be unenforceable on grounds of inequitable conduct, even though the Federal Circuit observed that "[e]ach of the issues on which the district court found inequitable conduct generated defenses by Nilssen that were not per se unreasonable…."  ("*Osram II* Decision").

46.     On March 17, 2008, during litigation captioned *Nilssen et al. v. Wal-Mart Stores, Inc. et al.* (case no. 04-C-5363, N.D.Ill.) ("*Wal-Mart* Litigation"), the district court found the '464 Patent to be unenforceable on grounds of inequitable conduct ("*Wal-Mart* Decision").

47.     On June 17, 2008, Circuit Judge Newman issued a dissenting opinion in which she described Nilssen's conduct as amounting to "non-culpable prosecution errors" and "less than egregious…prosecution." *Nilssen et al. v. Osram Sylvania, Inc. et al.* (appeal nos. 2007-1198, -1348, Fed.Cir.).

48.     Moreover, the '464, '681 and '680 Patents were each held unenforceable pursuant to law that no longer governs the issue whether inequitable conduct has been committed.

49.     On May 25, 2011, the *en banc* Court of Appeals for the Federal Circuit rendered its decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed.Cir. 2011) ("*Therasense*" or "*Therasense* Decision").

50. In *Therasense*, the Federal Circuit altered the law for evaluating whether inequitable conduct has been committed when it "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."  649 F.3d at 1290.

51. No court had, prior to the *Therasense* Decision, made a determination as to whether inequitable conduct had been committed with respect to the '213 or '140 Patents.

52. On September 30, 2015, during litigation captioned *Feit Electric Company, Inc. v. Beacon Point Capital, LLC* (case no. 13-C-9339, N.D.Ill.) ("*Feit* Litigation"), the district court held that no pre-*Therasense* unenforceability determination (including the *Osram I* Decision, *Osram II* Decision and *Wal-Mart* Decision) had issue preclusion effect with respect to the enforceability of the '140 Patent ("2015 *Feit* Decision").

53. Specifically, the district court stated in the 2015 *Feit* Decision that "collateral estoppel does not bar consideration of the enforceability of the '140 patent because the enforceability of the '140 patent was never previously adjudicated."  Accordingly, it was necessary to consider "the issue of inequitable conduct on the '140 patent under the new standard articulated in *Therasense*."

54. During the *Feit* Litigation, on both September 30, 2015 and September 22, 2017 ("2017 *Feit* Decision"), the district court denied summary judgment that the '140 Patent is unenforceable under the legal standards of *Therasense*.  Like the '140 Patent, the enforceability of the '213 Patent has never been adjudicated under pre-*Therasense* standards.

55. With respect to the pre-*Therasense* findings of inequitable conduct for the '464, '681 and '680 Patents, issue preclusion does not apply, where, as here, the governing inequitable

conduct law has been altered, the prior *Osram I* Decision, *Osram II* Decision and *Wal-Mart* Decision each applied old law, and the change in law by *Therasense* compels a different result under the operative facts.   *See, e.g.*, *Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 803 F.3d 620 (Fed.Cir. 2015).

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,459,213

56.     Plaintiff CFLT re-alleges paragraphs 1-55 as if fully incorporated herein.

### Background and Ownership of the Patent

57.     The '213 Patent is entitled "Ballast For Parallel-Connected Lamps."

58.     The '213 Patent lists Nilssen as its sole inventor.

59.     The '213 Patent was duly and legally issued by the PTO on October 1, 2002.

60.     The '213 Patent has a natural expiration date of October 1, 2019.

61.     On or around October 1, 2014, the '213 Patent lapsed due to non-payment of a maintenance fee.

62.     On or around June 15, 2018, CFLT became the owner of the '213 Patent, and acquired rights to collect pre-assignment patent infringement damages.

63.     Assignment of the '213 Patent to CFLT was recorded with the PTO on or around June 19, 2018.

### Prior Determinations Regarding Validity

64.     No claim of the '213 Patent has previously been declared invalid in a final decision by a court of competent jurisdiction.

**Prior Determinations Regarding Enforceability**

65.    No claim of the '213 Patent has previously been declared unenforceable in a final decision by a court of competent jurisdiction.

**Infringement**

66.    OSI has infringed the '213 Patent in the State of Delaware, in this Judicial District and elsewhere in the United States.

67.    OSI's infringements include, without limitation, making, using, distributing, importing, selling and/or offering to sell CFLs.

68.    In accordance with claim 19 of the '213 Patent, the Sylvania Sample CFL contains a "source," including a rectifier and an unlabeled 22 µF capacitor.  Starting at some given point in time, the source provides a substantially constant-magnitude DC supply voltage (measured from approximately 148 V to approximately 162 V) across a pair of DC terminals (e.g., the two leads of the 22 µF filter capacitor connected to buses labeled E+ and E-)[1].

69.    In accordance with claim 19 of the '213 Patent, the Sylvania Sample CFL contains an "inverter circuit," including a half-bridge inverter (comprising series-connected transistors labeled Q1 and Q2) and a series connected L-C circuit (e.g., L2 and C6).  The inverter circuit is connected with the DC terminals (e.g., the two leads of the 22 µF filter capacitor connected to buses labeled E+ and E-) and is operative to provide an AC bus voltage across a pair of bus terminals (e.g., the node labeled A2 and the junction between inductor T2 and capacitor C4).

---

[1] Unless otherwise indicated, labeling and circuit component designations in this Complaint appear on the circuit board of the Sylvania Sample CFL as commercially sold.

70.  In accordance with claim 19 of the '213 Patent, the AC bus voltage of the Sylvania Sample CFL, for a brief period of time (measured at about 20 ms to 30 ms), has a first relatively high magnitude (measured at well in excess of 500 V peak-to-peak).

71.  In accordance with claim 19 of the '213 Patent, the AC bus voltage of the Sylvania Sample CFL, after the brief period (measured at about 20 ms to 30 ms), has a second relatively low magnitude (measured at about 500 V peak-to-peak).

72.  In accordance with claim 19 of the '213 Patent, the Sylvania Sample CFL contains a number (one) of lamp-ballast series-combinations (e.g., the gas discharge lamp combined in series with a capacitor) being connected across the bus terminals (e.g., the node labeled A2 and the junction between inductor T2 and capacitor C4).

73.  In accordance with claim 19 of the '213 Patent, the Sylvania Sample CFL contains a lamp-ballast series-combination (e.g., the gas discharge lamp combined in series with a capacitor) that includes a gas discharge lamp and is operative to draw a lamp current from the bus terminals (e.g., the node labeled A2 and the junction between inductor T2 and capacitor C4).

74.  In view of the foregoing, the Sylvania Sample CFL is covered by at least claim 19 of the '213 Patent, as are additional Sylvania CFL products.

75.  OSI is thus liable for infringement of the '213 Patent pursuant to 35 U.S.C. § 271.

76.  As a direct and proximate result of OSI's infringing conduct, OSI should be held liable to CFLT in an amount that adequately compensates CFLT for its infringement, which, under 35 U.S.C. § 284, can be no less than a reasonable royalty.

**Notice of Infringement**

77. With respect to the '213 Patent, CFLT, and all prior owners of the patent, have complied with 35 U.S.C. § 287(a).

78. OSI has been on notice of the '213 Patent since no later than February 6, 2006, *i.e.*, the commencement of trial in the *Osram I* Litigation, during which trial the '213 Patent was submitted as a Joint Trial Exhibit (submitted as "JTX 1075").

79. Further, OSI has been on notice of Nilssen's CFL-related patents in general since the 1990s.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 6,172,464**

80. Plaintiff CFLT re-alleges paragraphs 1-79 as if fully incorporated herein.

**Background and Ownership of the Patent**

81. The '464 Patent is entitled "Compact Screw-in Fluorescent Lamp."

82. The '464 Patent lists Nilssen as its sole inventor.

83. The '464 Patent was duly and legally issued by the PTO on January 9, 2001.

84. The '464 Patent expired on January 9, 2018.

85. On or around June 15, 2018, CFLT became the owner of the '464 Patent, and acquired rights to collect pre-assignment patent infringement damages.

86. Assignment of the '464 Patent to CFLT was recorded with the PTO on or around June 19, 2018.

**Prior Determinations Regarding Validity**

87. No claim of the '464 Patent has previously been declared invalid in a final decision by a court of competent jurisdiction.

88.    The '464 Patent underwent *ex parte* reexamination proceedings before the PTO (control no. 90/007,983).

89.    *Ex parte* reexamination of the '464 Patent was requested by Osram Sylvania, Inc. on or around March 24, 2006.

90.    During reexamination proceedings for the '464 Patent, on or around December 9, 2008, the PTO issued a reexamination certificate, confirming the patentability of all originally-issued claims of the '464 Patent, including originally-issued claim 3 of the '464 Patent.

**Prior Determinations Regarding Enforceability**

91.    The '464 Patent was held unenforceable during the *Wal-Mart* Litigation.

92.    Neither OSI nor Ledvance was a party to the *Wal-Mart* Litigation.

93.    Neither OSI nor Ledvance was in privity with any party to the *Wal-Mart* Litigation.

94.    In the March 17, 2008 *Wal-Mart* Decision, the district court found, *inter alia*, the '464 Patent to be unenforceable on grounds of inequitable conduct relating to the underpayment of patent maintenance fees and the non-disclosure of litigation proceedings.

95.    The March 17, 2008 *Wal-Mart* Decision was rendered prior to the May 25, 2011 Federal Circuit *en banc* decision in *Therasense*.

96.    In *Therasense*, the Federal Circuit altered the law for evaluating whether inequitable conduct has been committed when it "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."  649 F.3d at 1290.

97.     The district court in the *Wal-Mart* Decision did not apply the legal standards required by *Therasense* when it determined the '464 Patent to be unenforceable on grounds of inequitable conduct.

98.     The issue of whether Nilssen committed inequitable conduct under the pre-*Therasense* legal standards applied in the *Wal-Mart* Decision is not the same issue as whether Nilssen committed inequitable conduct under the legal standards of *Therasense*.

99.     Because of the intervening changes in the law of inequitable conduct, the prior findings of inequitable conduct have no issue preclusion effect.  *See, e.g.*, *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599-600 (1948) (issue preclusion can apply only where the "controlling facts and applicable legal rules remain unchanged" between two proceedings) ("*Sunnen*").

100.    The '464 Patent was also held unenforceable during the *Feit* Litigation.

101.    Neither OSI nor Ledvance was a party to the *Feit* Litigation.

102.    Neither OSI nor Ledvance was in privity with any party to the *Feit* Litigation.

103.    During the *Feit* Litigation, on September 30, 2015, the district court found the '464 Patent to be unenforceable based on the collateral estoppel (or issue preclusion) effect of the *Wal-Mart* Litigation.  This finding has not ripened into a final judgment.

104.    The district court in the *Feit* Litigation did not evaluate the enforceability of the '464 Patent on the merits or otherwise in view of the legal standards required by *Therasense*.

105.    The district court's decision, in the *Feit* Litigation, that Beacon Point Capital, LLC ("Beacon," a former assignee of the '464 Patent) is precluded from litigating the enforceability of the '464 Patent is, at the very least, contrary to the principle of *Sunnen* that the "applicable legal rules remain unchanged" in order for issue preclusion to apply,

as well as the following authorities:  *B & B Hardware, Inc. v. Hargis Industries, Inc*., 135 S.Ct. 1293 (2015); *Dow Chem. Co. v. NOVA Chems. Corp. (Canada)*, 803 F.3d 620 (Fed.Cir. 2015); *Presidio Components, Inc. v. American Technical Ceramics Corp*., 2016 WL 7326609 (S.D.Cal. 2016); *Novo Nordisk, Inc. v. Paddock Labs., Inc*., 797 F.Supp.2d 926 (D. Minn. 2011); *Watts v. XL Systems, L.P.*, 2008 WL 5731945 (W.D. Tex. 2008); Restatement (Second) of Judgments § 28(2); 18 Wright & Miller, § 4417.

106. CFLT neither owns nor is owned by Beacon, and is not otherwise related to Beacon.

**Infringement**

107. Defendants have infringed the '464 Patent in the State of Delaware, in this Judicial District and elsewhere in the United States.

108. Defendants' infringements include, without limitation, making, using, distributing, importing, selling and/or offering to sell CFLs.

109. In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL is a structure having a central axis (e.g., the axis running through the center of the screw-base of the CFL).

110. In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL includes a screw-base operative to screw into a lamp socket of a type usually used for receiving and holding an ordinary household incandescent light bulb.

111. In accordance with claim 3 of the '464 Patent, the screw-base of the Sylvania Sample CFL has base terminals and is disposed symmetrically about the central axis.

112. In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL includes a fluorescent lamp having lamp terminals and at least two cylindrical lamp segments (e.g.,

the portions of the fluorescent lamp located nearest to the base portion of the CFL) disposed apart from, but parallel to, each other as well as to the central axis.

113. In accordance with claim 3 of the '464 Patent, the cylindrical lamp segments of the Sylvania Sample CFL each have a total length.

114. In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL is further characterized in that a flat plane disposed perpendicular to the central axis and intersecting one of the cylindrical lamp segments anywhere along its total length creates a cross-sectional pattern that (i) is symmetrical with respect to a flat plane disposed parallel to the central axis, and (ii) includes nothing but cross-sections of substantially identical cylindrical lamp segments.

115. In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL includes an "electronic sub-assembly" (including a rectifier, a half-bridge inverter (comprising series-connected transistors Q1 and Q2) and a series-connected L-C circuit (e.g., L2 and C6)) having input terminals (leads for connecting with the base terminals) and output terminals (e.g., the nodes labeled A2 and A3).

116. In accordance with claim 3 of the '464 Patent, the input terminals of the Sylvania Sample CFL are connected with the base terminals.

117. In accordance with claim 3 of the '464 Patent, the output terminals (e.g., the nodes labeled A2 and A3) of the Sylvania Sample CFL are connected with the lamp terminals.

118. In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL, upon being provided with an AC power line voltage at its input terminals, supplies an alternating voltage at its output terminals (e.g., the nodes labeled A2 and A3).

119.   In accordance with claim 3 of the '464 Patent, the measured frequency of the alternating voltage of the Sylvania Sample CFL is approximately 55 kHz, which is distinctly higher than the approximately 60 Hz frequency of the AC power line voltage.

120.   In accordance with claim 3 of the '464 Patent, the electronic subassembly of the Sylvania Sample CFL includes a transistor (e.g., the transistor labeled Q2).  The current measured through the transistor includes unidirectional pulses having a frequency of approximately 55 kHz, which is equal to the approximately 55 kHz frequency of the alternating voltage.

121.   In accordance with claim 3 of the '464 Patent, the unidirectional current pulses through the transistor Q2 of the Sylvania Sample CFL each have a measured duration of approximately 8.2 µs.  The duration of the complete cycle of the alternating voltage is measured at approximately 18.6 µs, of which half that time is 9.3 µs.  Accordingly, the duration of each unidirectional current pulse (measured at 8.2 µs) is distinctly shorter than half the complete cycle of the alternating voltage (measured at 9.3 µs).

122.   In accordance with claim 3 of the '464 Patent, the Sylvania Sample CFL, includes a compact housing mounted rigidly on the screw-base and which houses the electronic sub-assembly and which also holds and supports the fluorescent lamp, thereby forming a fluorescent lamp entity adapted to be screwed into and powered from a lamp socket at which ordinary AC power line voltage is provided.

123.   In view of the foregoing, the Sylvania Sample CFL is covered by at least claim 3 of the '464 Patent, as are additional Sylvania CFL products.

124.   Defendants are thus liable for infringement of the '464 Patent pursuant to 35 U.S.C. § 271.

125.    As a direct and proximate result of Defendants' infringing conduct, Defendants should be held liable to CFLT in an amount that adequately compensates CFLT for their infringement, which, under 35 U.S.C. § 284, can be no less than a reasonable royalty.

### Notice of Infringement and Willfulness

126.    With respect to the '464 Patent, CFLT, and all prior owners of the patent, have complied with 35 U.S.C. § 287(a).

127.    OSI has been on notice of its infringement of the '464 Patent since on or around May 6, 2003, *i.e.*, the date that Nilssen filed a complaint against OSI and alleged infringement of the '464 Patent (case no. 03-C-2962, N.D.Ill.).

128.    Further, OSI has been on notice of Nilssen's CFL-related patents in general since the 1990s.

129.    OSI has, since on or around May 25, 2011, been aware of the *Therasense* Decision.

130.    Because of OSI's notice of infringement of the '464 Patent and notice of the *Therasense* Decision, in view of the relationship between OSI and Ledvance, Ledvance also has been on notice of infringement of the '464 Patent and the *Therasense* Decision since the date of formation of Ledvance.

131.    Defendants' infringement of the '464 Patent has been clear.

132.    With respect to validity, despite OSI's efforts to have the '464 Patent invalidated by instigating *ex parte* reexamination proceedings, OSI failed to do so for each and every original claim of the '464 Patent, yet Defendants continued to infringe the '464 Patent.

133.    With respect to enforceability of the '464 Patent, no reasonable person or litigant properly could conclude that the legal standards applied in the *Wal-Mart* Decision are compatible with the legal standards of the May 25, 2011 *Therasense* Decision, such that

the inequitable conduct arguments once-successfully made with respect to the '464 Patent

reasonably could have prevailed after May 25, 2011.

134.    No reasonable person or litigant properly could conclude that CFLT is precluded in this

case from enforcing the '464 Patent based on any pre-*Therasense* determination that the

'464 Patent was unenforceable.

135.    Although the district court in the non-final (and yet to be appealed) *Feit* Litigation

refused to evaluate the enforceability of the '464 Patent under the legal standards of

*Therasense*, such refusal was, at the very least, contrary to the following authorities:  *B &*

*B Hardware, Inc. v. Hargis Industries, Inc*., 135 S.Ct. 1293 (2015); *Dow Chem. Co. v.*

*NOVA Chems. Corp. (Canada)*, 803 F.3d 620 (Fed.Cir. 2015); *Presidio Components, Inc.*

*v. American Technical Ceramics Corp*., 2016 WL 7326609 (S.D.Cal. 2016); *Novo*

*Nordisk, Inc. v. Paddock Labs., Inc*., 797 F.Supp.2d 926 (D. Minn. 2011); *Watts v. XL*

*Systems, L.P*., 2008 WL 5731945 (W.D. Tex. 2008); Restatement (Second) of Judgments

§ 28(2); 18 Wright & Miller, § 4417.  As such, issue preclusion does not attach to the

unenforceability determination in the *Feit* Litigation.  *See, e.g*., Restatement (Second) of

Judgments § 29(4) & (7).

136.    Defendants, since having notice of infringement of the '464 Patent and the May 25, 2011

*Therasense* Decision, continued to sell infringing CFLs despite:  (a) an objectively high

likelihood that their actions constitute infringement of the valid and enforceable '464

Patent; and (b) the fact that the risk of infringement of the valid and enforceable patent

was either known, or so obvious that the risk should have been known, to Defendants.

137.    In view of the foregoing, Defendants' infringement of the '464 Patent has been willful

and egregious.

138.   Pursuant to 35 U.S.C. § 284, CFLT should be awarded enhanced damages for Defendants' willful infringement of the '464 Patent.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 5,757,140

139.   Plaintiff CFLT re-alleges paragraphs 1-138 as if fully incorporated herein.

### Background and Ownership of the Patent

140.   The '140 Patent is entitled "Electronic Ballast With Frequency Control."

141.   The '140 Patent lists Nilssen as its sole inventor.

142.   The '140 Patent was duly and legally issued by the PTO on May 26, 1998.

143.   The '140 Patent expired on May 26, 2015.

144.   On or around June 15, 2018, CFLT became the owner of the '140 Patent, and acquired rights to collect pre-assignment patent infringement damages.

145.   Assignment of the '140 Patent to CFLT was recorded with the PTO on or around June 19, 2018.

### Prior Determinations Regarding Validity

146.   No claim of the '140 Patent has previously been declared invalid in a final decision by a court of competent jurisdiction.

### Prior Determinations Regarding Enforceability

147.   No claim of the '140 Patent has previously been declared unenforceable in a final decision by a court of competent jurisdiction.

148.   The enforceability of the '140 Patent was evaluated during the *Feit* Litigation.

149.    In the 2015 *Feit* Decision, the district court ruled that Beacon is not collaterally estopped from enforcing the '140 Patent and that the enforceability of the '140 Patent must be evaluated under the legal standards of *Therasense*.

150.    During the *Feit* Litigation, on both September 30, 2015 and September 22, 2017, the district court denied summary judgment that the '140 Patent is unenforceable under the legal standards of *Therasense*, and it did so despite the evidence presented and the findings in the *Osram I* Decision, *Osram II* Decision and *Wal-Mart* Decision.

**Infringement**

151.    OSI has infringed the '140 Patent in the State of Delaware, in this Judicial District and elsewhere in the United States.

152.    OSI's infringements include, without limitation, making, using, distributing, importing, selling and/or offering to sell CFLs.

153.    In accordance with claim 16 of the '140 Patent, the Sylvania Sample CFL contains a "source," including a rectifier and an unlabeled 22 µF capacitor.  The source provides a DC supply voltage at a set of DC terminals (e.g., the two leads of the 22 µF filter capacitor connected to buses labeled E+ and E-).

154.    In accordance with claim 16 of the '140 Patent, the Sylvania Sample CFL contains "inverter and load circuitry," including a half bridge inverter (comprising series-connected transistors Q1 and Q2) and a series-connected L-C circuit (e.g., L2 and C6). The inverter and load circuitry is connected with the DC terminals (e.g., the two leads of the 22 µF filter capacitor connected to buses labeled E+ and E-) and provides an AC voltage at a pair of AC terminals (e.g., the nodes labeled A2 and A3), which pair of AC terminals is connected with a gas discharge lamp.

155. In accordance with claim 16 of the '140 Patent, the measured frequency of the AC voltage of the Sylvania CFL Sample is approximately 55 kHz, which is substantially higher than the approximately 60 Hz frequency of the power line voltage on an ordinary electric utility power line.

156. In accordance with claim 16 of the '140 Patent, the gas discharge lamp of the Sylvania Sample CFL draws a lamp current from the AC terminals (e.g., the nodes labeled A2 and A3) at certain times and not at others (e.g., when the gas discharge lamp is disconnected, before lamp ignition or when the lamp is otherwise non-functional).

157. In accordance with claim 16 of the '140 Patent, the measured frequency of the AC voltage of the Sylvania Sample CFL is approximately 55 kHz when lamp current is being drawn and approximately 87 kHz when lamp current is not being drawn.  Accordingly, the frequency of the AC voltage of the Sylvania Sample CFL is different during times when the lamp current is being drawn as compared with times then lamp current is not being drawn.

158. In view of the foregoing, the Sylvania Sample CFL is covered by at least claim 16 of the '140 Patent, as are additional Sylvania CFL products.

159. OSI is thus liable for infringement of the '140 Patent pursuant to 35 U.S.C. § 271.

160. As a direct and proximate result of OSI's infringing conduct, OSI should be held liable to CFLT in an amount that adequately compensates CFLT for its infringement, which, under 35 U.S.C. § 284, can be no less than a reasonable royalty.

**Notice of Infringement and Willfulness**

161. With respect to the '140 Patent, CFLT, and all prior owners of the patent, have complied with 35 U.S.C. § 287(a).

162. OSI has been on notice of its infringement of the '140 Patent since on or around May 6, 2003, *i.e.*, the date that Nilssen filed a complaint against OSI and alleged infringement of the '140 Patent (case no. 03-C-2962, N.D.Ill.).

163. Further, OSI has been on notice of Nilssen's CFL-related patents in general since the 1990s.

164. OSI's infringement of the '140 Patent has been clear.

165. OSI has, since on or around May 25, 2011, been aware of the *Therasense* Decision.

166. Because the enforceability of the '140 Patent was never decided by a court prior to the date of the *Therasense* Decision, no reasonable person or litigant properly could conclude that any pre-*Therasense* determination of inequitable conduct as to a different patent precludes CFLT in this case from enforcing the '140 Patent.

167. OSI, since having notice of infringement of the '140 Patent and the May 25, 2011 *Therasense* Decision, continued to sell infringing CFLs despite: (a) an objectively high likelihood that its actions constitute infringement of the valid and enforceable '140 Patent; and (b) the fact that the risk of infringement of the valid and enforceable patent was either known, or so obvious that the risk should have been known, to OSI.

168. In view of the foregoing, OSI's infringement of the '140 Patent has been willful and egregious.

169. Pursuant to 35 U.S.C. § 284, CFLT should be awarded enhanced damages for OSI's willful infringement of the '140 Patent.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 5,510,681

170. Plaintiff CFLT re-alleges paragraphs 1-169 as if fully incorporated herein.

## Background and Ownership of the Patent

171. The '681 Patent is entitled "Operating Circuit For Gas Discharge Lamps."

172. The '681 Patent lists Nilssen as its sole inventor.

173. The '681 Patent was duly and legally issued by the PTO on April 23, 1996.

174. The '681 Patent expired on April 23, 2013.

175. On or around June 15, 2018, CFLT became the owner of the '681 Patent, and acquired rights to collect pre-assignment patent infringement damages.

176. Assignment of the '681 Patent to CFLT was recorded with the PTO on or around June 19, 2018.

## Prior Determinations Regarding Validity

177. No claim of the '681 Patent has previously been declared invalid in a final decision by a court of competent jurisdiction.

178. The '681 Patent underwent *ex parte* reexamination proceedings before the PTO (control no. 90/007,501).

179. *Ex parte* reexamination of the '681 Patent was requested by Osram Sylvania, Inc. on or around April 8, 2005.

180. During reexamination proceedings for the '681 Patent, on or around April 17, 2008, the PTO issued an office action, *inter alia*, rejecting originally issued claim 12 of the '681 patent on various grounds.

181. During reexamination proceedings for the '681 Patent, on or around July 17, 2008, Nilssen responded to the April 17, 2008 office action, arguing that the rejections of originally-issued claim 12 of the '681 Patent were without proper basis.

182.    The PTO did not address the merits of Nilssen's July 17, 2008 arguments in favor of patentability of claim 12 of the '681 Patent, and, instead, on or around September 19, 2008, vacated reexamination proceedings for the '681 Patent.

## Prior Determinations Regarding Enforceability

183.    The '681 Patent was held unenforceable during prior litigation, namely, the *Osram I* Litigation.

184.    In the July 5, 2006 *Osram I* Decision, the district court found, *inter alia*, the '681 Patent to be unenforceable on grounds of inequitable conduct relating to the underpayment of patent maintenance fees, recitations of patent ancestry, the non-disclosure of litigation proceedings and the non-disclosure of a prior art patent.

185.    The *Osram I* Decision was affirmed by the Federal Circuit in its October 10, 2007 *Osram II* Decision.

186.    Both the *Osram I* Decision and *Osram II* Decision were rendered prior to the May 25, 2011 Federal Circuit *en banc* decision in *Therasense*.

187.    In *Therasense*, the Federal Circuit altered the law for evaluating whether inequitable conduct has been committed when it "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." 649 F.3d at 1290.

188.    Neither the district court in the *Osram I* Decision nor the Federal Circuit in the *Osram II* Decision applied the legal standards required by *Therasense* when determining and affirming, respectively, the '681 Patent to be unenforceable on grounds of inequitable conduct.

189. The issue of whether Nilssen committed inequitable conduct under the pre-*Therasense* legal standards applied in the *Osram I* Decision and *Osram II* Decision is not the same issue as whether Nilssen committed inequitable conduct under the legal standards of *Therasense*.

190. Because of the intervening changes in the law of inequitable conduct, the prior findings of inequitable conduct have no issue preclusion effect. *See, e.g.*, *Sunnen*, 333 U.S. at 599-600 (issue preclusion can apply only where the "controlling facts and applicable legal rules remain unchanged" between two proceedings).

**Infringement**

191. OSI has infringed the '681 Patent in the State of Delaware, in this Judicial District and elsewhere in the United States.

192. OSI's infringements include, without limitation, making, using, distributing, importing, selling and/or offering to sell CFLs.

193. In accordance with claim 12 of the '681 Patent, the Sylvania Sample CFL contains a "first sub-circuit," including a rectifier and an unlabeled 22 µF capacitor. The first sub-circuit connects with the power line voltage of an ordinary electric utility power line and provides a DC voltage at a pair of DC terminals (e.g., the two leads of the 22 µF filter capacitor connected to buses labeled E+ and E-).

194. In accordance with claim 12 of the '681 Patent, the Sylvania Sample CFL contains a "second sub-circuit," including a half-bridge inverter (comprising series-connected transistors Q1 and Q2). The second sub-circuit is connected with the DC terminals (e.g., the two leads of the 22 µF filter capacitor connected to buses labeled E+ and E-) and

provides an AC voltage a pair of AC terminals (e.g., the emitter of Q1 and the emitter of Q2).

195.   In accordance with claim 12 of the '681 Patent, the AC voltage of the Sylvania Sample CFL has a measured fundamental period of 18.35 µs.

196.   In accordance with claim 12 of the '681 Patent, the AC voltage of the Sylvania Sample CFL has a first part during which the instantaneous magnitude remains substantially constant (measured between approximately 162 V and 166 V) over a measured duration of approximately 8.7 µs.

197.   In accordance with claim 12 of the '681 Patent, the AC voltage of the Sylvania Sample CFL has a second part during which the instantaneous magnitude remains substantially constant (measured between approximately -14 V and -10 V) over a measured duration of approximately 9.0 µs.

198.   In accordance with claim 12 of the '681 Patent, the duration of the second part of the AC voltage of the Sylvania Sample CFL (9.0 µs) is substantially equal to the duration of the first part (8.7 µs) and is distinctly longer than one fourth the total duration of the whole fundamental period (4.6 µs).

199.   In accordance with claim 12 of the '681 Patent, the Sylvania Sample CFL contains a gas discharge lamp having lamp terminals (e.g., at the nodes labeled A2 and A3).

200.   In accordance with claim 12 of the '681 Patent, the Sylvania Sample CFL contains a "third sub-circuit," including a series-connected L-C circuit (e.g., L2 and C6).  The third sub-circuit is connected between the AC terminals (e.g., the emitter of Q1 and the emitter of Q2) and the lamp terminals (e.g., at the nodes labeled A2 and A3).

201.    In accordance with claim 12 of the '681 Patent, when an AC voltage is provided at the AC terminals, the third sub-circuit of the Sylvania Sample CFL causes a lamp current to flow through the lamp.

202.    In accordance with claim 12 of the '681 Patent, the Sylvania Sample CFL contains compact physical structure for combining the three sub-circuits and the gas discharge lamp into a single, substantially rigid structure having a threaded portion adapted to be screwed into and held by an Edison-type lamp socket.

203.    In view of the foregoing, the Sylvania Sample CFL is covered by at least claim 12 of the '681 Patent, as are additional Sylvania CFL products.

204.    OSI is thus liable for infringement of the '681 Patent pursuant to 35 U.S.C. § 271.

205.    As a direct and proximate result of OSI's infringing conduct, OSI should be held liable to CFLT in an amount that adequately compensates CFLT for its infringement, which, under 35 U.S.C. § 284, can be no less than a reasonable royalty.

**Notice of Infringement and Willfulness**

206.    With respect to the '681 Patent, CFLT, and all prior owners of the patent, have complied with 35 U.S.C. § 287(a).

207.    OSI has been specifically aware that it was accused of infringing claim 12 (and other claims) of the '681 Patent since no later than August 19, 1997.

208.    At the very least, OSI has been on notice of its infringement of the '681 Patent since on or around August 1, 2000, *i.e.*, the date that Nilssen filed a complaint against OSI and alleged infringement of the '681 Patent (case no. 00-CV-695, D.Del.).

209.    Moreover, on or around June 20, 2003, Nilssen served OSI with a claim chart detailing the bases for his contentions that OSI CFLs infringed, *inter alia*, claim 12 of the '681 Patent.

210.    Further, OSI has been on notice of Nilssen's CFL-related patents in general since the 1990s.

211.    OSI's infringement of the '681 Patent has been clear.

212.    With respect to validity, despite OSI's efforts to have the '681 Patent invalidated by instigating *ex parte* reexamination proceedings, OSI failed to do so for original claim 12 (among others) of the '681 Patent, yet OSI continued to infringe the '681 Patent.

213.    OSI has, since on or around May 25, 2011, been aware of the *Therasense* Decision.

214.    With respect to enforceability of the '681 Patent, no reasonable person or litigant properly could conclude that the legal standards applied in the *Osram I* Decision and/or *Osram II* Decision are compatible with the legal standards of the May 25, 2011 *Therasense* Decision, such that the inequitable conduct arguments once-successfully made with respect to the '681 Patent reasonably could have prevailed after May 25, 2011.

215.    No reasonable person or litigant properly could conclude that CFLT is precluded in this case from enforcing the '681 Patent based on any pre-*Therasense* determination that the '681 Patent was unenforceable.

216.    OSI, since having notice of infringement of the '681 Patent and the May 25, 2011 *Therasense* Decision, continued to sell infringing CFLs despite:  (a) an objectively high likelihood that its actions constitute infringement of the valid and enforceable '681 Patent; and (b) the fact that the risk of infringement of the valid and enforceable patent was either known, or so obvious that the risk should have been known, to OSI.

217.   In view of the foregoing, OSI's infringement of the '681 Patent has been willful and egregious.

218.   Pursuant to 35 U.S.C. § 284, CFLT should be awarded enhanced damages for OSI's willful infringement of the '681 Patent.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 5,510,680

219.   Plaintiff CFLT re-alleges paragraphs 1-218 as if fully incorporated herein.

### Background and Ownership of the Patent

220.   The '680 Patent is entitled "Electronic Ballast With Special Waveforms."

221.   The '680 Patent lists Nilssen as its sole inventor.

222.   The '680 Patent was duly and legally issued by the PTO on April 23, 1996.

223.   The '680 Patent expired on April 23, 2013.

224.   On or around June 15, 2018, CFLT became the owner of the '680 Patent, and acquired rights to collect pre-assignment patent infringement damages.

225.   Assignment of the '680 Patent to CFLT was recorded with the PTO on or around June 19, 2018.

### Prior Determinations Regarding Validity

226.   No claim of the '680 Patent has previously been declared invalid in a final decision by a court of competent jurisdiction.

227.   The '680 Patent underwent *ex parte* reexamination proceedings before the PTO (control nos. 90/007,499 and 90/007,984).

228.   The first *ex parte* reexamination of the '680 Patent (control no. 90/007,499) was requested by Osram Sylvania, Inc. on or around April 1, 2005.

229.   The second *ex parte* reexamination of the '680 Patent (control no. 90/007,984) was requested by Osram Sylvania, Inc. on or around March 23, 2006.

230.   On or around September 23, 2008, the PTO vacated all reexamination proceedings for the '680 Patent.

### Prior Determinations Regarding Enforceability

231.   The '680 Patent was held unenforceable during the *Osram I* Litigation.

232.   In the July 5, 2006 *Osram I* Decision, the district court found, *inter alia*, the '680 Patent to be unenforceable on grounds of inequitable conduct relating to the underpayment of patent maintenance fees, recitations of patent ancestry and the non-disclosure of litigation proceedings.

233.   The *Osram I* Decision was affirmed by the Federal Circuit in its October 10, 2007 *Osram II* Decision.

234.   Both the *Osram I* Decision and *Osram II* Decision were rendered prior to the May 25, 2011 Federal Circuit *en banc* decision in *Therasense*.

235.   In *Therasense*, the Federal Circuit altered the law for evaluating whether inequitable conduct has been committed when it "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." 649 F.3d at 1290.

236.   Neither the district court in the *Osram I* Decision nor the Federal Circuit in the *Osram II* Decision applied the legal standards required by *Therasense* when determining and affirming, respectively, the '680 Patent to be unenforceable on grounds of inequitable conduct.

237. The issue of whether Nilssen committed inequitable conduct under the pre-*Therasense* legal standards applied in the *Osram I* Decision and *Osram II* Decision is not the same issue as whether Nilssen committed inequitable conduct under the legal standards of *Therasense*.

238. Because of the intervening changes in the law of inequitable conduct, the prior findings of inequitable conduct have no issue preclusion effect. *See, e.g.*, *Sunnen*, 333 U.S. at 599-600 (1948) (issue preclusion can apply only where the "controlling facts and applicable legal rules remain unchanged" between two proceedings).

**Infringement**

239. OSI has infringed the '680 Patent in the State of Delaware, in this Judicial District and elsewhere in the United States.

240. OSI's infringements include, without limitation, making, using, distributing, importing, selling and/or offering to sell CFLs.

241. In accordance with claim 9 of the '680 Patent, the Sylvania Sample CFL contains a "rectifier sub-assembly," including a rectifier and an unlabeled 22 μF capacitor. The rectifier sub-assembly has a pair of AC input terminals for connecting with the AC power line voltage of an ordinary electric utility power line, and, when so connected, provides a DC voltage across a set of DC output terminals (e.g., the two leads of the 22 μF filter capacitor connected to buses labeled E+ and E-).

242. In accordance with claim 9 of the '680 Patent, the Sylvania Sample CFL contains an "inverter sub-assembly," including a half-bridge inverter (comprising series-connected transistors Q1 and Q2) and series-connected L-C circuit (e.g., L2 and C6). The inverter sub-assembly has a set of DC input terminals (e.g., the lead of capacitor C2 connected

with the E+ bus and the lead of the winding of transformer T1 connected with the E- bus)
for connection with the DC output terminals (e.g., the two leads of the 22 µF filter
capacitor connected to buses labeled E+ and E-).  The inverter sub-assembly further has a
pair of high-frequency output terminals (e.g., the nodes labeled A2 and A3), at which
terminals is provided a measured high-frequency output voltage of approximately 55
kHz.

243.    In accordance with claim 9 of the '680 Patent, the high-frequency output voltage of the
Sylvania Sample CFL has a fundamental frequency (measured at approximately 55 kHz)
that is substantially higher than the fundamental frequency of the AC power line voltage
(approximately 60 Hz).

244.    In accordance with claim 9 of the '680 Patent, the inverter sub-assembly of the Sylvania
Sample CFL has a pair of inverter terminals (e.g., the emitter of transistor Q1 and the
emitter of transistor Q2).

245.    In accordance with claim 9 of the '680 Patent, across the pair of inverter terminals is
produced a periodically alternating voltage having a basic period.

246.    In accordance with claim 9 of the '680 Patent, the basic period of the periodically
alternating voltage of the Sylvania Sample CFL includes a first segment during which its
magnitude remains approximately constant at a positive potential (measured between
approximately 162 V and 166 V).

247.    In accordance with claim 9 of the '680 Patent, the basic period of the periodically
alternating voltage of the Sylvania Sample CFL includes a second segment during which
its magnitude decreases in a substantially continuous manner (measured from
approximately 166 V to approximately -12 V).

248.    In accordance with claim 9 of the '680 Patent, the basic period of the periodically alternating voltage of the Sylvania Sample CFL includes a third segment during which its magnitude remains approximately constant at a negative potential (measured between approximately -14 V and -10 V).

249.    In accordance with claim 9 of the '680 Patent, the basic period of the periodically alternating voltage of the Sylvania Sample CFL includes a fourth segment during which its magnitude increases in a substantially continuous manner (measured from approximately -10 V to approximately 170 V).

250.    In accordance with claim 9 of the '680 Patent, the Sylvania Sample CFL contains a gas discharge lamp connected in circuit with the high-frequency output terminals (e.g., the nodes labeled A2 and A3).

251.    In accordance with claim 9 of the '680 Patent, the gas discharge lamp of the Sylvania Sample CFL has a pair of thermionic cathodes, with each thermionic cathode having a pair of cathode terminals.

252.    In accordance with claim 9 of the '680 Patent, the Sylvania Sample CFL contains a screw base having a pair of base terminals for connection with an ordinary AC power line voltage.

253.    In accordance with claim 9 of the '680 Patent, the Sylvania Sample CFL contains compact physical structure for combining the screw-base, the rectifier sub-assembly, the inverter sub-assembly and the gas discharge lamp into a lamp assembly operable to be screwed into and held by an ordinary electric lamp socket, thereby to cause said AC power line voltage to be applied to the base terminals.

254.    In view of the foregoing, the Sylvania Sample CFL is covered by at least claim 9 of the '680 Patent, as are additional Sylvania CFL products.

255.    OSI is thus liable for infringement of the '680 Patent pursuant to 35 U.S.C. § 271.

256.    As a direct and proximate result of OSI's infringing conduct, OSI should be held liable to CFLT in an amount that adequately compensates CFLT for its infringement, which, under 35 U.S.C. § 284, can be no less than a reasonable royalty.

### Notice of Infringement and Willfulness

257.    With respect to the '680 Patent, CFLT, and all prior owners of the patent, have complied with 35 U.S.C. § 287(a).

258.    OSI has been specifically aware of the '680 Patent since no later than February 20, 1997 and that it was accused of infringing claim 9 (and other claims) of the '680 Patent since no later than October 22, 1997.

259.    At the very least, OSI has been on notice of its infringement of the '680 Patent since on or around August 1, 2000, *i.e.*, the date that Nilssen filed a complaint against OSI and alleged infringement of the '680 Patent (case no. 00-CV-695, D.Del.).

260.    Moreover, on or around June 20, 2003, Nilssen served OSI with a claim chart detailing the bases for his contentions that OSI CFLs infringed, *inter alia*, claim 9 of the '680 Patent.

261.    Further, OSI has been on notice of Nilssen's CFL-related patents in general since the 1990s.

262.    OSI's infringement of the '680 Patent has been clear.

263.    With respect to validity, despite OSI's efforts to have the '680 Patent invalidated by instigating *ex parte* reexamination proceedings, OSI failed to do so for original claim 9 (among others) of the '680 Patent, yet OSI continued to infringe the '680 Patent.

264.    OSI has, since on or around May 25, 2011, been aware of the *Therasense* Decision.

265.    With respect to enforceability of the '680 Patent, no reasonable person or litigant properly could conclude that the legal standards applied in the *Osram I* Decision and/or *Osram II* Decision are compatible with the legal standards of the May 25, 2011 *Therasense* Decision, such that the inequitable conduct arguments once-successfully made with respect to the '680 Patent reasonably could have prevailed after May 25, 2011.

266.    No reasonable person or litigant properly could conclude that CFLT is precluded in this case from enforcing the '680 Patent based on any pre-*Therasense* determination that the '680 Patent was unenforceable.

267.    OSI, since having notice of infringement of the '680 Patent and the May 25, 2011 *Therasense* Decision, continued to sell infringing CFLs despite:  (a) an objectively high likelihood that its actions constitute infringement of the valid and enforceable '680 Patent; and (b) the fact that the risk of infringement of the valid and enforceable patent was either known, or so obvious that the risk should have been known, to OSI.

268.    In view of the foregoing, OSI's infringement of the '680 Patent has been willful and egregious.

269.    Pursuant to 35 U.S.C. § 284, CFLT should be awarded enhanced damages for OSI's willful infringement of the '680 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CFL Technologies LLC respectfully requests that this Court enter:

a.   A judgment in favor of CFLT declaring that Ledvance has violated 35 U.S.C. § 271 by infringing the '464 Patent;

b.   A judgment in favor of CFLT declaring that OSI has violated 35 U.S.C. § 271 by infringing the '213, '464, '140, '681 and '680 Patents;

c.   An order requiring Defendants to pay CFLT its damages, costs, expenses, prejudgment interest and post-judgment interest for Defendants' infringement of the patents-in-suit as provided for under 35 U.S.C. § 284, and an accounting of on-going post-judgment infringement;

d.   A judgment and order that Ledvance's infringement of the '464 Patent has been willful and egregious and requiring Ledvance to pay CFLT enhanced damages in accordance with 35 U.S.C. § 284;

e.   A judgment and order that OSI's infringement of the '464, '140, '681 and '680 Patents has been willful and egregious and requiring OSI to pay CFLT enhanced damages in accordance with 35 U.S.C. § 284;

f.   A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to CFLT its reasonable attorneys' fees;

g.   A declaratory judgment that the '213, '464, '140, '681 and '680 Patents are valid and enforceable; and

h.   Any and all other relief, at law or equity, to which CFLT may show itself to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff CFL Technologies LLC, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Respectfully submitted,

By:   */s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, GOLDMAN, MCLAUGHLIN
 & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware  19806-4204
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

William W. Flachsbart
Robert P. Greenspoon
Jonathan Hill
FLACHSBART & GREENSPOON, LLC
333 North Michigan Avenue
27th Floor
Chicago, Illinois  60601

*Attorneys for Plaintiff*
*CFL Technologies LLC*

Dated:  September 17, 2018