IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CFL TECHNOLOGIES LLC,

        Plaintiff,

v.

OSRAM SYLVANIA, INC. and
LEDVANCE, LLC,

        Defendants.

C.A. No. 1:18-cv-01445-RGA

## MEMORANDUM OPINION

Megan C. Haney and John C. Phillips, Jr., PHILLIPS GOLDMAN McLAUGHLIN & HALL,
P.A., Wilmington, DE; William W. Flachsbart (argued), Jonathan Hill, and Robert P.
Greenspoon, FLACHSBART & GREENSPOON, LLC, Chicago, IL.

    Attorneys for Plaintiff.

Nathan Hoeschen, John W. Shaw, and David M. Fry, SHAW KELLER LLP, Wilmington, DE;
Kevin P. Martin (argued) and Srikanth K. Reddy, GOODWIN PROCTER LLP, Boston, MA;
Monte M. F. Cooper, GOODWIN PROCTER LLP, Redwood City, CA.

    Attorneys for Defendants.

July  , 2019

ANDREWS, U.S. DISTRICT JUDGE:

Presently before me is Defendants' Motion to Dismiss Complaint on the Basis of Claim Preclusion and Issue Preclusion. (D.I. 9). The Parties have fully briefed the issues. (D.I. 10, 18, 19, 23). I heard oral argument on May 14, 2019. (D.I. 26 ("Tr.")). For the reasons discussed more fully below, I will grant Defendants' motion as to willful infringement and deny their motion as to the rest.

Plaintiff filed this suit on September 17, 2018. (D.I. 1). It alleges that Defendants infringe the claims of five related patents: U.S. Patent Nos. 6,459,213 ("'213 Patent"); 6,172,464 ("'464 Patent"); 5,757,140 ("'140 Patent"); 5,510,681 ("'681 Patent"); and 5,510,680 ("'680 Patent"). (Id.). All five patents are expired. (D.I. 10 at 3). The Accused Products are Defendants' compact fluorescent lightbulbs ("CFLs").[1] (D.I. 1 at ¶¶ 26-30).

## I. BACKGROUND

Plaintiff's predecessor in interest and the named inventor on all of the patents-in-suit, Mr. Ole K. Nilssen,[2] sued Defendants in this District on August 1, 2000. (D.I. 1 at ¶ 42). He alleged

---

[1]

> A CFL is a type of fluorescent lamp that typically screws into a regular, Edison-type light bulb socket, the type of socket most commonly found in household lamps. Today, almost all CFLs include a small electronic ballast as one component in its assembly. An electronic ballast converts low-frequency AC power to higher frequencies of AC power to operate a gas discharge lamp. The electronic ballasts found in CFLs are relatively small in comparison to stand-alone units that are used to power the long fluorescent lamp tubes commonly used in office building ceiling fixtures.

*Nilssen v. Wal-Mart Stores, Inc.*, 2008 WL 11350028, at *1 (N.D. Ill. Mar. 17, 2008).

[2] "Nilssen . . . [was] an inventor who . . . amassed a patent portfolio of over 200 patents, most of which [were] directed toward lighting products, including [CFLs], track lighting and stand-alone electronic ballasts." *Nilssen*, 2008 WL 11350028, at *1.

> Nilssen originally hired registered patent attorneys to draft and prosecute his patent applications. In 1983, Nilssen assumed the prosecution of his pending patent applications and began drafting and prosecuting his patent applications, *pro se*. Nilssen consider[ed] himself an expert in the prosecution of patents and prosecuting

2

that Defendants' CFLs infringed 26 patents, including the '680 and '681 Patents. (D.I. 10 at 4). The case was transferred to the Northern District of Illinois. In February 2006, that court held a bench trial to decide whether certain patents, including the '680 and '681 Patents, were unenforceable due to inequitable conduct. On July 6, 2006, the court concluded that they were. *Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884, 911 (N.D. Ill. 2006) ("*OSRAM I*"), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007). The court's unenforceability finding as to the '680 and '681 patent was based on Mr. Nilssen: (1) failing to pay large entity maintenance fees; (2) improperly including a March 20, 1978 patent in the ancestry of the asserted patents; (3) failing to disclose ongoing litigation with Motorola; and (4) as to the '681 Patent, failing to disclose known prior art that he had disclosed in other pending applications. *Id.* at 902-11. The court found that Mr. Nilssen's excuses for the conduct were not credible and found that Mr. Nilssen intended to deceive the Patent Office. *Id.* The court, however, declined to apply the doctrine of unclean hands to extend its findings of unenforceability to all of the related patents-in-suit. *Id.* at 911.

Mr. Nilssen filed a second lawsuit ("*OSRAM II*") against Defendants on May 2, 2003. (D.I. 16, Exh. 7). There, he alleged that Defendants' CFLs infringed 15 additional patents, including the '464 and '140 Patents. (*Id.* at ¶¶ 14, 25). After receiving Defendants' invalidity contentions, Mr. Nilssen dropped his claims that Defendants infringed the '464 and '140 Patents from the suit. (D.I. 16, Exh. 8 at 7). At a status conference on April 15, 2004, Mr. Nilssen voluntarily moved to dismiss the remaining claims with leave to reinstate the case by June 25,

---

his patent applications, *pro se*, because he believe[d] that he underst[ood] the subject matter "far better than any attorney." Nilssen estimate[d] that as a *pro se* applicant, he . . . prosecuted over 1,000 patent applications. Nilssen also prosecuted, *pro se*, appeals before the Board of Patent Appeals and the Federal Circuit.

*Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884, 890 (N.D. Ill. 2006), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007).

2004. Minute Order, *Nilssen v. Osram Sylvania Inc.*, No. 03-2962 (N.D. Ill. April 15, 2004),

D.I. 28. The court granted his motion. *Id.* Over the next year, the court repeatedly extended the

deadline for Mr. Nilssen to reinstate the case, with the last recorded deadline arriving on July 22,

2005. *See Nilssen v. Osram Sylvania Inc.*, No. 03-2962, D.I. 30-42 (minute entries extending

deadline). On September 27, 2005, the court again entered a minute entry dismissing the case.

*Id.* at D.I. 49. The court later characterized the dismissal as "with prejudice." (D.I. 16 at Exh.

9).

On August 13, 2004, during the pendency of *OSRAM I* and *OSRAM II*, Mr. Nilssen filed

an additional lawsuit against Wal-Mart. *See Nilssen v. Wal-Mart Stores, Inc.* ("*Wal-Mart*"),

2008 WL 11350028 (N.D. Ill. Mar. 17, 2008). In that lawsuit, he initially asserted, among

others, the '680, '681, and '464 Patents. *Id.* at *1. On summary judgment, Mr. Nilssen

acknowledged the unenforceability ruling in *OSRAM I* and only pursued his claim of

infringement of the '464 Patent. *Id.* As in *OSRAM I*, the *Wal-Mart* court found the '464 Patent

unenforceable due to Mr. Nilssen's improper payment of small entity fees and his failure to

disclose litigation with Motorola. *Id.* at *3.

Geo Foundation, Ltd., Mr. Nilssen's co-plaintiff in *Wal-Mart*, filed an appeal of the

district court's denial of its motion to vacate the *Wal-Mart* unenforceability determination as it

applied to Geo. Notice of Appeal, *Nilssen v. Wal-Mart Stores, Inc.*, No. 04-5363 (N.D. Ill. Nov.

19, 2009), D.I. 307; *see* Motion by Plaintiff GEO Foundation Ltd to Vacate Judgment Pursuant

to Fed. R. Civ. P. 60(b)(4), *Nilssen v. Wal-Mart Stores, Inc.*, No. 04-5363 (N.D. Ill. Nov. 19,

2009), D.I. 303. During the pendency of that appeal, the law of inequitable conduct changed

dramatically when the Federal Circuit issued its *en banc* decision in *Therasense, Inc. v. Becton,*

*Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011). The Federal Circuit ordered the parties to

4

submit supplemental briefing on the impact of the *Therasense* decision. *Nilssen v. Wal-Mart Stores, Inc.*, 394 F. App'x 709 (Fed. Cir. 2010). The court issued a Rule 36 affirmance once that briefing was complete. *Nilssen v. Wal-Mart Stores, Inc.*, 438 F. App'x 898 (Fed. Cir. 2011).

After Mr. Nilssen's death, his patents were assigned to his widow, who assigned the rights to Beacon Point Capital, LLC, who, in turn, assigned the rights to Plaintiff. (D.I. 10 at 4).

## II.  LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). A court may decide a Rule 12(b)(6) motion to dismiss based on preclusion grounds so long as the affirmative defense of preclusion is apparent on the face of the complaint. *See Brody v. Hankin*, 145 F. App'x 768, 771-72 (3d Cir. 2005).

## III. ANALYSIS

Defendants argue for dismissal of Plaintiff's complaint on three grounds: claim preclusion as to claims stemming from the '464, '140, '681 and '680 Patents, issue preclusion as to the enforceability of all patents-in-suit, and failure to state a willfulness claim. I will address each of their arguments in turn.

### A. Claim Preclusion

Plaintiff is not claim precluded from litigating Defendants' alleged infringement of the '464, '140, '681, and '680 Patents. The Federal Circuit applies the law of the regional circuit when deciding whether claim preclusion applies. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1298 (Fed. Cir. 2017), *cert. dismissed*, 139 S. Ct. 44 (2018). In the Third Circuit, a claim is precluded if "there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) [the current] suit [is] based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). The Federal Circuit applies its own law to determine "[w]hether two infringement allegations constitute the same . . . cause of action." *Mentor Graphics Corp.*, 851 F.3d at 1298. Under Federal Circuit precedent, an infringement action is not the same cause of action as a previous action if the accused products did not exist at the time of the previous suit. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012). This is the result of the common law principle that "a party who sues a tortfeasor is ordinarily not barred by a prior judgment from seeking relief for discrete tortious action by the same tortfeasor that occurs subsequent to the original action." *Id.* In *Aspex*, the Federal Circuit explained that, as each act of patent infringement is a discrete tort, claim preclusion does not attach to later acts of infringement. *Id.* at 1343. This remains true even if the products are "essentially the same" or, in fact, the same. *Mentor Graphics Corp.*, 851 F.3d at 1299; *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014).

6

The Parties do not dispute that the first two factors of the claim preclusion test are met in this case. (*See* D.I. 10 at 9-11; D.I. 18 at 5-6). They do, however, disagree as to whether these are the same causes of action as in the earlier suits. (*See* D.I. 10 at 11-12; D.I. 18 at 5-6). It is not clear from the record how similar the accused CFLs in this case are to those previously accused. (*See* D.I. 1 at ¶ 29; *see also* Tr. at 25:16-26:3). What is clear, however, is that Plaintiff seeks damages only for alleged tortious conduct that occurred after the termination of the earlier *OSRAM* lawsuits. Thus, under *Aspex* and *Mentor Graphics*, Plaintiff's cause of action is not the same cause of action as was previously litigated.

Defendants separately argue that the *Kessler* doctrine, a supplement to claim preclusion, should apply in this case. *Kessler v. Eldred*, 206 U.S. 285 (1907). The *Kessler* doctrine is a sparsely used tool that "allow[s] an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056 (emphasis in original). It gives an accused infringer "rights with respect to specific products that had been held to be noninfringing, even when the specific *acts* of infringement would not be barred by claim preclusion because they occurred postfinal judgment." *Id.* at 1057 (emphasis in original). The Federal Circuit has expressed reservations about the *Kessler* doctrine and has expanded its reach only in limited circumstances. *See SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018) (characterizing *Kessler* as a claim preclusion gap-filler for postfinal judgment actions of adjudged noninfringers); *Brain Life*, 746 F.3d at 1058 (noting that the continued existence of the *Kessler* doctrine is "questionable" in light of modern claim and issue preclusion law).

As Defendants are not adjudged noninfringers, the *Kessler* doctrine does not apply. Defendants admit that the *OSRAM I* was resolved by a finding of inequitable conduct and that

*OSRAM II* was resolved by Plaintiff voluntarily moving to dismiss the case. (D.I. 19 at 4). Neither case was resolved by a finding of noninfringement. (*Id.*). They argue, however, that the *Kessler* doctrine should extend to dismissals with prejudice as a general matter. (*See id.*). They cite *Brain Life* as support for this proposition. (*Id.*). In *Brain Life*, the defendant was found not to infringe two patents during a first lawsuit. *Brain Life*, 746 F.3d at 1058. Prior to that final decision, the plaintiff had dismissed with prejudice its claims related to a third patent. *Id.* The Federal Circuit held that the defendant was an adjudged noninfringer and that the *Kessler* doctrine precluded the plaintiff from again accusing the products of infringement. *Id.* at 1058-59. It noted, "[plaintiff] could have continued to assert [the dropped] claims." *Id.* at 1058. Those circumstances are distinguishable from this case. In *Brain Life*, the Federal Circuit held that, because the plaintiff chose to drop one of its patents, it had to live with the consequences of that decision. That is, the defendant's status as an adjudged noninfringer could not be defeated by the plaintiff's own choice not to pursue certain claims. Here, no court has determined that Defendants do not infringe Plaintiff's patents. Thus, Defendants are not adjudged noninfringers, regardless of the fact that Plaintiff's cases were dismissed with prejudice. The *Kessler* doctrine does not apply.[3]

---

[3] Defendants cite two pre-1982 (pre-Federal Circuit) cases to support their argument for extension of the *Kessler* doctrine: *Molinaro v. Am. Tel. & Tel. Co.*, 460 F. Supp. 673, 676 (E.D. Pa. 1978), and *Technograph Printed Circuits, Ltd. v. United States*, 372 F.2d 969, 979-80 (Ct. Cl. 1967). In light of the Federal Circuit's precedent on this issue, I do not find these cases persuasive. I recognize that a recent Northern District of California opinion, *In re: PersonalWeb Techs., LLC et al. Patent Litigation*, 2019 WL 1455332 (N.D. Cal. April 2, 2019), credited *Molinaro* on the basis that the Federal Circuit cited the case in 2015 as support for a different proposition. *Id.* at *15. Considering the Federal Circuit's clear hesitancy to extend *Kessler*, however, I do not find the court's reasoning in the *PersonalWeb* opinion persuasive.

Plaintiff is not claim precluded or barred by the *Kessler* doctrine from pursuing infringement claims against Defendants. Thus, I will not dismiss Plaintiff's complaint as to the '464, '140, '681 and '680 Patents on the basis of claim preclusion.

### B. Issue Preclusion

Plaintiff is not issue precluded from litigating the enforceability of the patents-in-suit. The Federal Circuit applies "the law of the regional circuit to the general procedural question of whether issue preclusion applies." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). It, however, applies its own "precedent to questions involving substantive issues of patent law, issues of issue preclusion that implicate substantive patent law issues, or issues of issue preclusion that implicate the scope of [its] own previous decisions." *Id.* The Third Circuit has four requirements for the application of issue preclusion: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (cleaned up). Other relevant considerations are whether the precluded party had a full and fair opportunity to litigate the issue and whether the issue was determined by a valid final judgment. *Id.*

There is an exception to the law of issue preclusion that applies when there is a change in the law governing the previously decided issue. The Federal Circuit has articulated the following three-part test:[4]

---

[4] The Federal Circuit applies its own law when addressing the change in law exception to issue preclusion. *See Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1381-82 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 813 (2019); *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 803 F.3d 620, 627 & n.6 (Fed. Cir. 2015).

First, the governing law must have been altered. Second, the decision sought to be reopened must have applied the old law. Third, the change in law must compel a different result under the facts of the particular case.

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 803 F.3d 620, 629 (Fed. Cir. 2015)

(citations omitted). *Dow Chemical* addressed a change in the law of indefiniteness that occurred

after the Federal Circuit had affirmed, on a first appeal, that certain claims were not indefinite.

*Id.* at 624-25. The Supreme Court decided *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S.

898 (2014), while the case was on appeal a second time for review of the district court's

supplemental damages decision. *Dow Chem. Co.*, 803 F.3d at 624-25. The Federal Circuit held,

under exceptions to both law of the case and issue preclusion, that reconsidering indefiniteness

was appropriate. *Id.* at 630-35. It went on to find the claims at issue invalid as indefinite. *Id.* at

635.

The Federal Circuit reaffirmed its statement of the exception in *Voter Verified, Inc. v.*

*Election Sys. & Software LLC*, 887 F.3d 1376, 1381 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 813

(2019). In *Voter Verified*, the Federal Circuit applied the *Dow Chemical* test to determine

whether the change in law exception applied. The Supreme Court had decided *Alice Corp. Pty.*

*v. CLS Bank Int'l*, 573 U.S. 208 (2014), in the time between lawsuits on the same patent between

the same parties. *Voter Verified, Inc.*, 887 F.3d at 1381-82. The district court in the first suit had

decided, without analysis, that the asserted patent was not invalid under Section 101. *Id.* at

1379-80. The Federal Circuit stated, "If there were a change in the law, then issue preclusion

would not apply, which would allow us to reach the merits of the § 101 issue." *Id.* at 1381. It

ultimately held that the exception to issue preclusion did not apply because *Alice* did not alter the

governing law. *Id.*[5]

---

[5] Defendants cite *Morgan v. Dep't of Energy*, 424 F.3d 1271, 1276 (Fed. Cir. 2005), as support
for their argument that the change in law exception does not apply when the same facts are at

10

### 1. Change in the Law Applied in the First Case

Consistent with meeting the first and second prongs of the Federal Circuit's test, the law governing inequitable conduct has shifted dramatically in the time between Plaintiff's earlier actions and this lawsuit. "Inequitable conduct is a[] [judge-made] equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc.*, 649 F.3d at 1285. Leading up to the Federal Circuit's 2011 *Therasense* decision, the bar for finding inequitable conduct was low:

> [T]his court has espoused low standards for meeting the intent requirement, finding it satisfied based on gross negligence or even negligence. This court has also previously adopted a broad view of materiality, using a "reasonable examiner" standard based on the PTO's 1977 amendment to Rule 56. Further weakening the showing needed to establish inequitable conduct, this court then placed intent and materiality together on a "sliding scale." This modification to the inequitable conduct doctrine held patents unenforceable based on a reduced showing of intent if the record contained a strong showing of materiality, and vice versa. In effect, this change conflated, and diluted, the standards for both intent and materiality.

*Therasense, Inc.*, 649 F.3d at 1287-88 (citations omitted). *Therasense* clarified each of the issues identified above. On intent, the Federal Circuit explained:

> [T]he accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard does not satisfy this intent requirement. In a case involving nondisclosure of information,

---

issue. (D.I. 19 at 5). In that opinion, stemming from a Merit Systems Protection Board appeal, the Federal Circuit stated, "barring collateral estoppel when the very same acts are at issue would mean that collateral estoppel is inapplicable whenever a later decision calls into question the propriety of the legal analysis of an earlier decision. Such a holding would be in contravention of the fundamental concept of collateral estoppel." *Morgan*, 424 F.3d at 1276. Defendants are correct that application of the *Morgan* rule would lead to a different result in this case, as the facts underlying the earlier inequitable conduct findings have not changed. I am not certain how reconcilable *Morgan* is with *Dow Chemical* and *Voter Verified*. I believe, however, that I should follow the Federal Circuit's more recent, and patent-specific, statement of the exception to issue preclusion. As the law is articulated, and applied, in *Dow Chemical* and *Voter Verified*, it makes no difference whether the underlying issue involves the same facts. *Voter Verified* is especially clear on this point. There, the Federal Circuit expressly stated that if the law of patentability had changed, regardless of no change in the factual underpinnings of the Section 101 determination, issue preclusion would not apply. *See Voter Verified, Inc.*, 887 F.3d at 1381.

clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference. In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it. . . .

[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.

*Id.* at 1290 (emphasis in original) (internal citations and quotations omitted). On materiality, the

court clarified:

[T]he materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.

*Id.* at 1291. It also rejected the use of a "sliding scale." *Id.* at 1290. Thus, it is clear that the first

and second prongs of the Federal Circuit's test for the exception to issue preclusion are met in

this case.

### 2. *Therasense* Compels a Different Result

On the third prong of the Federal Circuit's test, Plaintiff has shown that *Therasense*

would compel a different result as to the issue of inequitable conduct. The Northern District of

Illinois held the previously asserted patents unenforceable on four grounds: (i) undisclosed

litigation with Motorola, (ii) priority misclaims, (iii) incorrect small entity assertions, and (iv)

undisclosed prior art. I will address each issue in turn.

### i. Undisclosed Litigation

Mr. Nilssen did not disclose to the Patent Office his ongoing litigation with Motorola

during the pendency of the '680, '681, and '464 Patents' applications. *OSRAM I*, 440 F. Supp.

2d at 896; *Wal-Mart*, 2008 WL 11350028 at *3. The patents at issue in the Motorola litigation

were directed to the same general subject matter as the pending applications. *Id.* The district

12

court found that Mr. Nilssen's non-disclosure was material because it was information that the Patent Office required an applicant to disclose. *See id.* Since *Therasense*, however, the Federal Circuit has held that failure to disclose litigation, without more, is not sufficient to establish materiality. *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290-92 (Fed. Cir. 2012). As the court in *Wal-Mart* and *OSRAM I* did not find anything more than a failure to disclose the litigation, the failure, as articulated in those cases, is immaterial as a matter of law. Thus, it would not support a finding of inequitable conduct under the current law.

ii. Priority Misclaims

Mr. Nilssen filed a patent ancestry for the '680 and '681 Patents that traced those Patents' roots back to a 1978 patent application. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007). The district court found, and the Federal Circuit affirmed, that his "recitation of application histories did not comply with the applicable 35 U.S.C. § 120 requirements, and certain applications were thus not entitled to earlier priority dates." *Id.* The Federal Circuit affirmed the district court's finding of materiality, stating, "It is not necessary for a holding of inequitable conduct that an examiner rely on a claim for priority or that entitlement to an earlier priority be expressly argued in order to overcome prior art." *Id.* It focused, instead, on the possibility that Mr. Nilssen *could have* relied on the ancestry to claim an earlier priority date if necessary. *Id.* A potential improper priority claim, which was not made, does not meet the but-for materiality standard of *Therasense*. Thus, Mr. Nilssen's faulty patent ancestry would not support a finding of inequitable conduct under the current law.

13

### iii. Incorrect Small Entity Assertions

Mr. Nilssen improperly paid small entity maintenance fees for the '680, '681, and '464 Patents from 1995 until trial in *OSRAM I*.[6] *OSRAM I*, 440 F. Supp. 2d at 904. The court in *OSRAM I* explained that, in 2001, the C.F.R. provision governing which entities qualify for small entity status was amended to clarify ambiguities. *Id.* at 902-03. The court did not credit Mr. Nilssen's explanation that he did not read or understand the rule change. *Id.* at 904-05. Rather, the court found that Mr. Nilssen acted with an intent to deceive the Patent Office. *Id.* at 905. Thus, it found inequitable conduct. The Federal Circuit affirmed, noting,

> While a misrepresentation of small entity status is not strictly speaking inequitable conduct in the prosecution of a patent, as the patent has already issued if maintenance fees are payable (excepting an issue fee), it is not beyond the authority of a district court to hold a patent unenforceable for inequitable conduct in misrepresenting one's status as justifying small entity maintenance payments.

*Nilssen*, 504 F.3d at 1231.[7]

Although the *OSRAM I* court found that Mr. Nilssen acted with intent to deceive, it did not make this determination under the higher standard set in *Therasense*—it did not find that Mr. Nilssen, in fact, knew his assertion of small entity status was incorrect. Under *Therasense*, it is not enough that Mr. Nilssen should have known of a rule change. *Therasense*, 649 F.3d at 1290-91. Moreover, the *OSRAM I* court was not operating under the "single most reasonable inference" standard for finding deceptive intent, as articulated in *Therasense*. *Id.* at 1290.

---

[6] The *Wal-Mart* court essentially adopted the *OSRAM I* court's findings on this issue. *Wal-Mart*, 2008 WL 11350028 at *3. Thus, I will discuss only *OSRAM I*, but my analysis applies equally to both cases.

[7] It is not clear to me how misrepresentation of small entity status after the issuance of a patent relates to the Federal Circuit's articulation of a "material to patentability" standard in *Therasense*. Whether this remains a viable theory of inequitable conduct may be an open question. *See Sycamore IP Holdings LLC v. AT&T Corp.*, 2017 WL 3394480, at *4 (E.D. Tex. Aug. 8, 2017) (noting that the Federal Circuit has not addressed this issue post-*Therasense* and stating that the law should be viewed as "unsettled").

Accordingly, the *OSRAM I* and *Wal-Mart* courts' findings would not support a conclusion of inequitable conduct under post-*Therasense* law.

### iv. Undisclosed Prior Art

The *OSRAM I* court found that Mr. Nilssen engaged in inequitable conduct, in relation to the '681 Patent only, by failing to disclose a known prior art reference. *OSRAM I*, 440 F.Supp.2d at 896. The court found the failure material but did not find but-for materiality. *Id.* A determination that Mr. Nilssen did not disclose a reference, without a finding of but-for materiality, is not sufficient under *Therasense*. The court also found an intent to deceive the patent office. *Id.* On appeal, the Federal Circuit found "an inference that Nilssen intended to deceive the PTO not unreasonable," but also noted that the failure to disclose might have been an oversight. *Nilssen*, 504 F.3d at 1235. This is not sufficient for a finding of intent under *Therasense*'s "single most reasonable inference" standard. Thus, neither the *OSRAM I* court's finding of materiality nor its finding of intent would have been sufficient under *Therasense*.

### v. The Sum of the Conduct

Defendants do not attempt to defend each of the earlier inequitable conduct findings individually. (*See* D.I. 19 at 9). Instead, they argue that the inequitable conduct determination is supportable under a totality of the circumstances analysis. (*Id.*). Defendants do not, however, show how Mr. Nilssen's actions meet the *Therasense* standard. That is, they do not argue how the totality of Mr. Nilssen's actions was material to patentability or that there is clear and convincing evidence of his deceptive intent. A series of immaterial or unintentional improper actions during patent prosecution, without more, does not amount to inequitable conduct. Thus, even under a totality of the circumstances analysis, it is clear that *Therasense* would have compelled a different result in the *OSRAM I* and *Wal-Mart* cases.

Plaintiff has shown that there was a change in law and that the change would have altered the result in its earlier cases. Accordingly, I find that Plaintiff is not issue precluded from pursuing claims of infringement against Defendants on any of the asserted patents. [8]

### C. Willfulness

Defendants argue that I should dismiss Plaintiff's willfulness claims.[9] (D.I. 10 at 20). They contend:

> Defendants cannot have acted egregiously where they had (1) knowledge that the '680, '681, and '464 patents had been repeatedly found unenforceable by multiple federal courts, including in a case where OSRAM was [a] party, and (2) a good-faith belief that the '140 and '213 patents are also likely unenforceable for the same reasons.

(*Id.*). I agree. "[T]o state a claim of willful infringement, the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim." *Välinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *10-12 (D. Del. May 29, 2018) (discussing *Mentor Graphics Corp.*, 851 F.3d at 1282). Given the factual background of this case, Plaintiff's allegations that Defendants knew the patents-in-suit were enforceable are not plausible. Pre-*Therasense*, courts held the '680, '681, and '464 Patents unenforceable in final judgments. The facts that led to those judgments are largely identical to the facts underlying the prosecution of the '140 Patent. Thus, I will grant Defendants' motion to dismiss Plaintiff's willfulness claims.

---

[8] I recognize that a court in the Northern District of Illinois, where parallel litigation is pending, reached the opposite conclusion with respect to previously litigated patents. (D.I. 16, Exh. 14 (memorandum order in *Feit Elec. Co., Inc. v. Beacon Point Capital, LLC*, No. 13-CV-09339, (N.D. Ill.))). That court, however, did not have the benefit of *Voter Verified* to clarify the scope of the Federal Circuit's exception to issue preclusion.

[9] Plaintiff does not allege willfulness in relation to the '213 Patent. (D.I. 18 at 19 n.10).

## IV.  CONCLUSION

Plaintiff is not precluded from pursuing any of its infringement claims against Defendants.  I will, however, grant Defendants' motion as to Plaintiff's claims of willful infringement.