IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CFL TECHNOLOGIES LLC,<br><br>        *Plaintiff*,<br><br>v.<br><br>OSRAM SYLVANIA, INC. and LEDVANCE, LLC,<br><br>        *Defendants*. | C.A. No. 18-1445-RGA<br><br>**Jury Trial Demanded** |
| OSRAM SYLVANIA, INC. and LEDVANCE, LLC,<br><br>        *Counterclaim Plaintiffs*,<br><br>v.<br><br>CFL TECHNOLOGIES LLC,<br><br>        *Counterclaim Defendant*. | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES; COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL**

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants OSRAM SYLVANIA, INC. ("OSRAM") and LEDVANCE LLC ("LEDVANCE") (collectively, "Defendants") hereby respond to the Complaint of CFL Technologies LLC ("CFLT" or "Plaintiff") as follows.   Defendants deny each and every allegation contained in Plaintiff's Complaint that is not expressly admitted below.   Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably may follow from the admitted facts.   Defendants deny that Plaintiff is entitled to the relief requested in the Complaint or to any other relief.

## NATURE OF THE CASE[1]

1.     Defendants admit that the Complaint asserts patents previously asserted against products of at least one Defendant.   Defendants deny that Plaintiff's claims have merit and otherwise deny the remaining allegations in Paragraph 1.

## PARTIES

2.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 2 and, on that basis, deny those allegations.

3.     Paragraph 3 contains legal conclusions to which no response is required.   To the extent a response is required, Defendants deny Plaintiff is the lawful assignee of U.S. Patent Nos. 6,459,213 ("the '213 Patent"), 6,172,464 ("the '464 Patent"), 5,757,140 ("the '140 Patent"), 5,510,681 ("the '681 Patent") and 5,510,680 ("the '680 Patent") (collectively "the Asserted Patents").

---

[1] Defendants believe that no response is required to the headings in the Complaint.  To the extent a response is deemed required and to the extent those headings and titles could be construed to contain factual allegations, those allegations are denied.

4.      Denied.

5.      Defendants admit that the face of each of the Asserted Patents lists Ole K. Nilssen ("Nilssen") as the named inventor.  Defendants otherwise deny the allegations in Paragraph 5.

6.      Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 6 and, on that basis, deny those allegations.

7.      Paragraph 7 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

8.      Defendants admit that a purported assignment to CFLT of all Asserted Patents was recorded with the United Stated Patent and Trademark Office ("USPTO") on or around June 19, 2018.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Denied.

18.     Admitted.

19.     Admitted.

## JURISDICTION AND VENUE

20.     Defendants admit that Plaintiff purports to state a claim and/or seek relief under the patent laws of the United States, 35 U.S.C. §§ 271(a), 281 and 284-85.

21.     Defendants admit that the Court has subject matter jurisdiction under  28 U.S.C. §§ 1331 and 1338(a).

22.     Defendants admit that the Court has personal jurisdiction over them.  Paragraph 22 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

23.     Admitted.

24.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 24 and, on that basis, deny those allegations.

25.     Defendants admit that venue is proper in this District, that OSRAM is a Delaware corporation, and that LEDVANCE is a Delaware limited liability company.

## ADDITIONAL BACKGROUND REGARDING
## THE ACCUSED PRODUCTS AND PATENTS

26.     Denied.

27.     Admitted.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 32 and, on that basis, deny those allegations.

33.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 33 and, on that basis, deny those allegations.

34.     Paragraph 34 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

35.     Admitted.

36.     Admitted.

37.     Defendants admit that, on June 10, 1996, Joseph S. Romanow sent a letter to Nilssen. Defendants otherwise deny the allegations in Paragraph 37.

38.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 38 and, on that basis, deny those allegations.

39.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 39 and, on that basis, deny those allegations.

40.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 40 and, on that basis, deny those allegations.

41.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 41 and, on that basis, deny those allegations.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Denied.

49.     Admitted.

50.     Paragraph 50 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the *Therasense* opinion includes the statement "tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public" but otherwise deny the allegations in Paragraph 50.

51.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 51 and, on that basis, deny those allegations.

52.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 52 and, on that basis, deny those allegations.

53.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 53 and, on that basis, deny those allegations.

54.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 54 and, on that basis, deny those allegations.

55.     Denied.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,459,213

56.     Defendants incorporate by reference herein their responses to Paragraphs 1-55, as set forth above.

57.     Admitted.

58.     Admitted.

59.     Defendants admit that the face of the '213 Patent sets forth an issuance date of October 1, 2002.

60.     Denied.

61.     Admitted.

62.     Denied.

63.     Defendants admit that a purported assignment of the '213 Patent to CFLT was recorded with the USPTO on or around June 19, 2018.

64.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 64 and, on that basis, deny those allegations.

65.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 65 and, on that basis, deny those allegations.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 77 and, on that basis, deny those allegations.

78.     Paragraph 78 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

79.     Paragraph 79 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 6,172,464**

80.     Defendants incorporate by reference herein their responses to Paragraphs 1-79, as set forth above.

81.     Admitted.

82.     Admitted.

83.     Defendants admit that the face of the '464 Patent sets forth an issuance date of January 9, 2001.

84.     Denied.

85.     Denied.

86.     Defendants admit that a purported assignment of the '464 Patent to CFLT was recorded with the USPTO on or around June 19, 2018.

87.     Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 87 and, on that basis, deny those allegations.

88.     Admitted.

89.     Admitted.

90.     Defendants admit that the USPTO issued a reexamination certificate on or around December 9, 2008 in reexamination of the '464 Patent.

91.     Admitted.

92.    Admitted.

93.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 93 and, on that basis, deny those allegations.

94.    Admitted.

95.    Admitted.

96.    Paragraph 96 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the *Therasense* opinion includes the statement "tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public" but otherwise deny the allegations in Paragraph 96.

97.    Paragraph 97 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 97.

98.    Denied.

99.    Denied.

100.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 100 and, on that basis, deny those allegations.

101.    Admitted.

102.    Admitted.

103.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 103 and, on that basis, deny those allegations.

104.    Paragraph 104 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 104.

105. Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 105 and, on that basis, deny those allegations.

106. Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 106 and, on that basis, deny those allegations.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

126.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 126 and, on that basis, deny those allegations.

127.    Denied.

128.    Denied.

129.    Defendants admit that the Federal Circuit issued the *Therasense* decision on or around May 25, 2011.  Defendants otherwise deny the allegations in Paragraph 129.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.  Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

138.    Denied.  Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 5,757,140

139.    Defendants incorporate by reference herein their responses to Paragraphs 1-138, as set forth above.

140.    Admitted.

141.    Admitted.

142.    Defendants admit that the face of the '140 Patent sets forth an issuance date of May 26, 1998.

143.    Denied.

144.    Denied.

145.    Defendants admit that a purported assignment of the '140 Patent to CFLT was recorded with the USPTO on or around June 19, 2018.

146.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 146 and, on that basis, deny those allegations.

147.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 147 and, on that basis, deny those allegations.

148.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 148 and, on that basis, deny those allegations.

149.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 149 and, on that basis, deny those allegations.

150.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 150 and, on that basis, deny those allegations.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

155.    Denied.

156.    Denied.

157.    Denied.

158.    Denied.

159.    Denied.

160.    Denied.

161.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 161 and, on that basis, deny those allegations.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Defendants admit that the Federal Circuit issued the *Therasense* decision on or around May 25, 2011.  Defendants otherwise deny the allegations in Paragraph 165.

166.    Denied.

167.    Denied.

168.    Denied.  Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

169.    Denied.  Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

## **COUNT IV**

## **INFRINGEMENT OF U.S. PATENT NO. 5,510,681**

170.    Defendants incorporate by reference herein their responses to Paragraphs 1-169, as set forth above.

171.    Admitted.

172.    Admitted.

173.    Defendants admit that the face of the '681 Patent sets forth an issuance date of April 23, 1996.

174.    Denied.

175.    Paragraph 175 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

176.    Defendants admit that a purported assignment of the '681 Patent to CFLT was recorded with the USPTO on or around June 19, 2018.

177.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 177 and, on that basis, deny those allegations.

178.    Admitted.

179.    Admitted.

180.    Admitted.

181.    Admitted.

182.    Admitted.

183.    Admitted.

184.    Admitted.

185.    Admitted.

186.    Admitted.

187.    Paragraph 187 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the *Therasense* opinion includes the statement "tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public" but otherwise deny the allegations in Paragraph 187.

188.    Paragraph 188 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 188.

189.    Denied.

190.    Denied.

191.    Denied.

192.    Denied.

193.    Denied.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

198.    Denied.

199.    Denied.

200.    Denied.

201.    Denied.

202.    Denied.

203.    Denied.

204.    Denied.

205.    Denied.

206.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 206 and, on that basis, deny those allegations.

207.    Denied.

208.    Denied.

209.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 209 and, on that basis, deny those allegations.

210.    Denied.

211.    Denied.

212.    Denied.

213.    Defendants admit that the Federal Circuit issued the *Therasense* decision on or around May 25, 2011.  Defendants otherwise deny the allegations in Paragraph 213.

214.    Denied.

215.    Denied.

216.    Denied.

217.    Denied.  Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

218.    Denied.  Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

## <u>COUNT V</u>

## <u>INFRINGEMENT OF U.S. PATENT NO. 5,510,680</u>

219.    Defendants incorporate by reference herein their responses to Paragraphs 1-218, as set forth above.

220.    Admitted.

221.    Admitted.

222.    Defendants admit that the face of the '680 Patent sets forth an issuance date of April 23, 1996.

223.    Denied.

224. Denied.

225. Defendants admit that a purported assignment of the '681 Patent to CFLT was recorded with the USPTO on or around June 19, 2018.

226. Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 226 and, on that basis, deny those allegations.

227. Admitted.

228. Admitted.

229. Admitted.

230. Admitted.

231. Admitted.

232. Admitted.

233. Admitted.

234. Admitted.

235. Paragraph 235 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that the *Therasense* opinion includes the statement "tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public" but otherwise deny the allegations in Paragraph 235.

236. Paragraph 236 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 236.

237. Denied.

238. Denied.

239. Denied.

240.    Denied.

241.    Denied.

242.    Denied.

243.    Denied.

244.    Denied.

245.    Denied.

246.    Denied.

247.    Denied.

248.    Denied.

249.    Denied.

250.    Denied.

251.    Denied.

252.    Denied.

253.    Denied.

254.    Denied.

255.    Denied.

256.    Denied.

257.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 257 and, on that basis, deny those allegations.

258.    Denied.

259.    Denied.

260.    Defendants are without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 260 and, on that basis, deny those allegations.

261.   Denied.

262.   Denied.

263.   Denied.

264.   Defendants admit that the Federal Circuit issued the *Therasense* decision on or around May 25, 2011. Defendants otherwise deny the allegations in Paragraph 264.

265.   Denied.

266.   Denied.

267.   Denied.

268.   Denied. Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

269.   Denied. Additionally, the Court dismissed Plaintiff's willfulness claims on July 9, 2019. *See* D.I. 27 & 28.

## RESPONSE TO PRAYER FOR RELIEF

270.   Defendants deny that Plaintiff is entitled to any of the relief sought in the prayer for relief or any relief whatsoever.

## DEMAND FOR JURY TRIAL

271.   Defendants join Plaintiff's request for a trial by jury of any and all issues in this action so triable.

## AFFIRMATIVE DEFENSES

### First Defense

### (Non-Infringement)

1.   Defendants do not infringe directly or indirectly, literally or under the doctrine of equivalents, one or more valid claims of the '213 Patent, the '464 Patent, the '140 Patent,

the '681 Patent, or the '680 Patent.

## Second Defense

### (Invalidity)

2.  One or more claims of the of the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent are invalid for failure to comply with one or more of the conditions for patentability, including, but not limited to, inventorship, utility, novelty, non-obviousness, enablement, definiteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

## Third Defense

### (Limitation of Damages and Costs)

3.  Plaintiff's claim for damages and costs under Title 35 of the United States Code is limited, in whole or in part, by one or more of 35 U.S.C. §§ 286, 287, and 288.  In addition, Plaintiff's claim for damages and costs is limited because Plaintiff is not entitled to any damages for alleged infringement of the '464, '681, and '680 Patents during the period which those patents were unenforceable in view of prior federal court decisions adverse to Plaintiff's predecessor-in-interest.

## Fourth Defense

### (No Exceptional Case)

4.  Plaintiff cannot prove that this is an exceptional case justifying an award of attorneys' fees against Defendants pursuant to 35 U.S.C. § 285.

## Fifth Defense

### (Failure to Mark)

5.  Plaintiff's pre-lawsuit claims for damages are barred, in whole or in part, for failure to

comply with the marking and notice requirements of 35 U.S.C. § 287.

## Sixth Defense

### (No Willful Infringement)

6.    Defendants have not willfully infringed any claim of the '213 Patent, the '464 Patent, the
'140 Patent, the '681 Patent, or the '680 Patent.   The Court dismissed Plaintiff's
willfulness claims on July 9, 2019.  *See* D.I. 27 & 28.

## Seventh Defense

### (Prosecution History Estoppel)

7.    Plaintiff's claims are barred, in whole or in part, by the doctrine of prosecution history
estoppel, which bars Plaintiffs from taking positions with respect the scope of any
asserted claim that has been surrendered during the prosecution of one or more claims of
the Asserted Patents.

## Eighth Defense

### (Waiver/Acquiescence)

8.    Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver and/or
acquiescence, where Plaintiff waived its right to argue the '681 Patent and '680 Patent
are valid, or acquiesced to the invalidity findings, by failing to appeal the invalidity
findings and order vacating proceedings from the USPTO during various reexamination
proceedings.

## Ninth Defense

### (Equitable Estoppel)

9.    Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel,
where: (1) Plaintiff, by failing to challenge the prior determinations of unenforceability

for over seven years after the Federal Circuit's decision in *Therasense* and failing to seek to reopen *ex parte* reexamination proceedings after determinations of the USPTO rejecting the asserted claims, led Defendants to reasonably infer that the patentee did not intend to enforce the Asserted Patents against Defendants; (2) Defendants relied on Plaintiff's conduct and the final determinations of unenforceability from the Federal Circuit; and (3) due to Defendants' reliance, Defendants would be materially prejudiced if Plaintiff is allowed to proceed with its claim.

### Tenth Defense

### (Unenforceability)

10.     Plaintiff's claims are barred, in whole or in part, due to inequitable conduct on the part of the applicant during prosecution of the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent.  Specifically, during prosecution, the applicant made materially and intentionally false statements regarding the Asserted Patents' priority dates, filed false declarations attesting to those priority dates, and the examiner thereafter materially relied upon those false statements to limit his review of prior art to art post-dating the false priority date in determining whether to grant the Asserted Patents.  The filing of an unmistakably false affidavit is considered material under *Therasense*. Additionally, but for the false priority claims, the USPTO would not have issued the Asserted Patents.   Further, based on information and belief, the applicant sent correspondence evidencing his fear that he could not obtain the Asserted Patents based on prior art and his dishonest scheme to submit a false priority claim to the USPTO.

**Eleventh Defense**

**(Double Patenting)**

11.    Plaintiff's claims are barred, in whole or in part, due to the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent being invalid due to double patenting.   Specifically, the Asserted Patents are not patentably distinct from earlier claims issued to the applicant of the Asserted Patents, such as in, as a non-limiting example, U.S. Patent No. 4,857,806.

**Twelfth Defense**

**(Claim Preclusion)**

12.    Plaintiff's claims are barred, in whole or in part, due to the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent having already been asserted in cases involving the same parties or their privies as the current case.   Claims of infringement for these patents were already asserted against the same or substantially the same products, were fully litigated, and resulted in final judgments of unenforceability and/or dismissals with prejudice.   Specifically, the '681 Patent and the '680 Patent were asserted in *Nilssen v. Osram Sylvania*, Inc., 440 F. Supp. 2d 884, 893 (N.D. Ill. 2006) ("*OSRAM I*"), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007) ("*OSRAM II*") which resulted in final judgments of unenforceability.   The '140 Patent and '464 Patent were asserted in *Nilssen v. Osram Sylvania, Inc.*, No. 03 C 2962 (N.D. Ill. May. 2, 2003) ("*OSRAM III*")) and dismissed with prejudice.   *See* D.I. 16, Ex. 7 at ¶¶ 14, 25 (*OSRAM III* Complaint); D.I. 16, Ex. 9 (*OSRAM III* dismissal with prejudice).

## **Thirteenth Defense**

### **(Issue Preclusion)**

13. Plaintiff's claims are barred, in whole or in part, because the issue of whether the applicants conduct during prosecution of the Asserted Patents rendered the Asserted Patents unenforceable has been previously litigated to a final, valid judgment on the merits. The issue of whether the applicants conduct during prosecution was inequitable was necessary to the courts final judgments in *OSRAM I* and *Wal-Mart* that the '464 Patent, the '681 Patent and the '680 Patent were unenforceable. *OSRAM I*, 440 F. Supp. 2d 884; *Wal-Mart*, 2008 WL 11350028. The same conduct previously adjudged to have rendered the '464 Patent, the '681 Patent and the '680 Patent unenforceable is found in all Asserted Patents. Issue preclusion bars relitigation of this same issue in the present case.

## **Fourteenth Defense**

### **(*Kessler* Doctrine)**

14. Plaintiff's claims are barred, in whole or in part, because under the *Kessler* doctrine, a plaintiff who is unsuccessful in an earlier infringement lawsuit is thereafter precluded from bringing new infringement claims under the same patent against the same or "essentially the same" products sold after the date of the first judgement. Plaintiff was unsuccessful in earlier infringement lawsuits, *OSRAM I* and *OSRAM III*, asserting the '140 Patent, the '464 Patent, the '681 Patent and the '680 Patent against products that are essentially the same as the currently accused products. *See* D.I. 1 at ¶¶ 127, 162, 209, 260 (allegations that Defendants were on notice current products infringe based on allegations against products in *OSRAM I* and *OSRAM III*).

**Fifteenth Defense**

**(Express or Implied License)**

15.    Plaintiff's claims are barred, in whole or in part, because Defendants are licensed to practice one or more claims of the Asserted Patents.  As a non-limiting example, Plaintiff's predecessor-in-interest signed a Statement of Non-Liability granting Defendants certain patent rights with respect to the '680 Patent and the '681 Patent. *See* D.I. 16, Ex. 5.

**Sixteenth Defense**

**(Abandonment / Intervening Rights)**

16.    Plaintiff's claims are barred, in whole or in part, by abandonment and the doctrine of intervening rights, including 35 U.S.C. § 307.  As a non-limiting example, Plaintiff is not entitled to recover damages for the period during which the Asserted Patents, including the '681 and '680 Patents, were held by one or more federal district courts and/or the USPTO to be unenforceable.  Plaintiff abandoned its right to recover damages when it abandoned its defense of the enforceability of claims as originally filed.  Plaintiff's acquiescence to the federal courts' and the USPTO's actions finding the patents to be unenforceable, including the USPTO's dismissal of the reexaminations of the '681 and '680 Patents, gave rise to intervening rights by the public, including Defendants, to introduce and use any invention allegedly disclosed by the patents during the period that the patents were treated as unenforceable by either the federal courts or the USPTO.

**Sixteenth Defense**

**(Prosecution Laches)**

17.    Plaintiff's claims are barred, in whole or in part, by the doctrine of prosecution laches,

due to unreasonable and undue delay in the prosecution of one or more of the Asserted Patents.

## RESERVATION OF DEFENSES

18.     Defendants reserve their right to assert any additional defenses or counterclaims, at law or equity, which may exist, during or upon completion of discovery.

## COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT

OSRAM SYLVANIA, INC. ("OSRAM") and LEDVANCE LLC ("LEDVANCE") (collectively, "Counterclaim Plaintiffs") allege the following Counterclaims against CFL Technologies LLC ("CFLT" or "Counterclaim Defendant") as follows:

## THE PARTIES

1.     Counterclaim Plaintiff OSRAM is a Delaware corporation with headquarters in Wilmington, Massachusetts, with its principal place of business located at 100 Endicott Street, Danvers, Massachusetts 01923.

2.     Counterclaim Plaintiff LEDVANCE is a Delaware corporation with headquarters in Wilmington, Massachusetts, with its principal place of business located at 200 Ballardvale Street, Wilmington, Massachusetts 01887.

3.     On information and belief, CFLT is an Illinois limited liability company, with a principal place of business located at 222 Merchandise Mart Plaza, Suite 1225, Chicago, Illinois 60654.

## JURISDICTION AND VENUE

4.     These Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, based upon an

actual controversy between the parties that the patents asserted by CFLT are invalid, not infringed, and/or unenforceable.

5.     In view of CFLT filing its Complaint, and in view of Counterclaim Plaintiffs' defenses to the Complaint, there exists an actual and justiciable controversy between the parties regarding the validity and alleged infringement of U.S. Patent Nos. 6,459,213 ("the '213 Patent"), 6,172,464 ("the '464 Patent"), 5,757,140 ("the '140 Patent"), 5,510,681 ("the '681 Patent") and 5,510,680 ("the '680 Patent") (collectively "the Asserted Patents").

6.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. § 1, *et seq.*

7.     Counterclaim Defendant has consented to personal jurisdiction for the Counterclaims by filing of the original Complaint in this matter.

8.     Venue is proper in this District under 28 U.S.C. § 1404 because CFLT filed its Complaint in this District.

## COUNTERCLAIM I

### (Declaratory Judgment of Non-Infringement of the '213 Patent)

9.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-8 of their Counterclaims as if fully set forth herein.

10.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs have infringed the '213 Patent.

11.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '213 Patent.  *See* D.I. 1 ¶ 67.

12.     Counterclaim Plaintiffs have denied CFLT's claim of infringement of the '213 Patent and contend that their CFL products, such as the Sylvania Sample CFL, do not infringe

one or more valid asserted claims of the '213 Patent, directly or indirectly, literally or under the doctrine of equivalents.

13.    As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 19 of the '213 Patent (which was specifically asserted in the Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include an arrangement that includes a source that provides a substantially constant-magnitude DC supply voltage.  The accused products also do not satisfy the requirement of claim 19 where for a brief period starting at a given point in time, the AC bus voltage being of a first relatively high magnitude; after the brief period, the AC bus voltage being of a second relatively low magnitude.

14.    An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning alleged infringement of the '213 Patent.

15.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from the Court that the '213 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

<u>**COUNTERCLAIM II**</u>

<u>**(Declaratory Judgment of Non-Infringement of the '464 Patent)**</u>

16.    Counterclaim Plaintiffs repeat and reallege Paragraphs 1-15 of their Counterclaims as if fully set forth herein.

17.    By its Complaint, CFLT asserts that Counterclaim Plaintiffs have infringed the '464 Patent.

18.    CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '464 Patent.  *See* D.I. 1 ¶ 108.

19.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '464 Patent and contend that they do not infringe one or more valid asserted claims of the '464 Patent, directly or indirectly, literally or under the doctrine of equivalents.

20.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 3 of the '464 Patent (specifically asserted in CFLT's Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused CFL products, including the Sylvania Sample CFL, do not include the claimed structure including an electronic sub-assembly having input terminals and output terminals wherein the frequency of the alternating voltage being distinctly higher than that of the AC power line voltage; the electronic subassembly being additionally characterized by including a transistor through which flows unidirectional current pulses at a periodic rate equal to that of the alternating voltage, where each current pulse having a duration distinctly shorter than half of the complete cycle of the alternating voltage, as required by claim 3.

21.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '464 Patent.

22.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from the Court that the '464 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

## COUNTERCLAIM III

### (Declaratory Judgment of Non-Infringement of the '140 Patent)

23.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-22 of their Counterclaims as if fully set forth herein.

24.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs infringe the '140 Patent.

25.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '140 Patent. *See* D.I. 1 ¶ 152.

26.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '140 Patent and contend that they do not infringe one or more valid asserted claims of the '140 Patent, directly or indirectly, literally or under the doctrine of equivalents.

27.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 16 of the '140 Patent (specifically asserted in CFLT's Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include an arrangement wherein a measured frequency of the AC voltage is substantially higher than the power line voltage, as required by claim 16.

28.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '140 Patent.

29.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '140 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

## COUNTERCLAIM IV

### (Declaratory Judgment of Non-Infringement of the '681 Patent)

30.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-29 of their Counterclaims as if fully set forth herein.

31.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs infringe the '681 Patent.

32.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '681 Patent.  *See* D.I. 1 ¶ 192.

33.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '681 Patent and contend that they do not infringe one or more valid asserted claims of the '681 Patent, directly or indirectly, literally or under the doctrine of equivalents.

34.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 12 of the '681 Patent (specifically asserted in CFLT's complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include an arrangement comprising a second sub-circuit connected with the DC terminals and operative to provide an AC voltage between a pair of AC terminals wherein the AC voltage being characterized by having a fundamental period: (i) during a first part of which its instantaneous magnitude remains substantially constant at a first given level; and (ii) during a second part of which its instantaneous magnitude remains substantially constant at a second given level, the second part having a total duration substantially equal to that of the first part as well as distinctly longer than one fourth the total duration of the whole fundamental period, as required by claim 12.

35.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '681 Patent.

36.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '681 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

## COUNTERCLAIM V

### (Declaratory Judgment of Non-Infringement of the '680 Patent)

37.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-36 of their Counterclaims as if fully set forth herein.

38.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs infringe the '680 Patent.

39.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '680 Patent. *See* D.I. 1 ¶ 240.

40.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '680 Patent and contend that they do not infringe one or more valid asserted claims of the '680 Patent, directly or indirectly, literally or under the doctrine of equivalents.

41.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 9 of the '680 Patent (specifically asserted by CFLT's Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include a fundamental frequency substantially higher than the AC power line frequency, an inverter sub-assembly being characterized by producing, across a pair of inverter terminals, a periodically alternating inverter voltage having a basic period consisting of: (i) a first segment during which its magnitude remains approximately constant at a positive potential; (ii) a second segment during which its magnitude decreases in a substantially continuous manner; (iii) a third

segment during which its magnitude remains approximately constant at a negative potential; and (iv) a fourth segment during which its magnitude increases in a substantially continuous manner, as required by claim 9.

42.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '680 Patent.

43.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '680 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs' CFL products, such as the Sylvania Sample CFL.

## COUNTERCLAIM VI

### (Declaratory Judgment of Invalidity of the '213 Patent)

44.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-43 of their Counterclaims as if fully set forth herein.

45.     By its Complaint, CFLT asserts that the '213 Patent is valid.   Counterclaim Plaintiffs have denied this allegation and contend that the '213 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

46.     The claims of the '213 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '213 Patent. As a non-limiting example, the claims of the '213 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,733,541 issued on May 15, 1973 to R. Elms (the "Elms Patent").   The Young Patent and the Elms Patent disclose and/or render obvious all elements of asserted claim

19 of the '213 Patent, including the claimed arrangement of a DC voltage supply source, inverter circuit, and a number of lamp-ballast series combinations.

47.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '213 Patent.

48.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '213 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

## COUNTERCLAIM VII

### (Declaratory Judgment of Invalidity of the '464 Patent)

49.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-48 of their Counterclaims as if fully set forth herein.

50.     By its Complaint, CFLT asserts that the '464 Patent is valid.   Counterclaim Plaintiffs have denied this allegation and contend that the '464 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

51.     The claims of the '464 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '464 Patent. As a non-limiting example, the claims of the '464 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,733,541 issued on May 15, 1973 to R. Elms (the "Elms Patent").  The Young Patent and Elms Patent disclose and/or render obvious all elements of asserted claim 3 of the '464 Patent, including the claimed structure with a screw-base, a fluorescent lamp having lamp terminals and plural cylindrical lamp segments, an electronic sub-assembly having input terminals and output terminals, and housing means mounted rigidly on the screw base.

52.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '464 Patent.

53.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '464 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

## COUNTERCLAIM VIII

### (Declaratory Judgment of Invalidity of the '140 Patent)

54.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-53 of their Counterclaims as if fully set forth herein.

55.     By its Complaint, CFLT asserts that the '140 Patent is valid.  Counterclaim Plaintiffs have denied this allegation and contend that the '140 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

56.     The claims of the '213 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '140 Patent. As a non-limiting example, the claims of the '140 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,733,541 issued on May 15, 20973 to R. Elms (the "Elms Patent").  The Young Patent and Elms Patent disclose and/or render obvious all elements of asserted claim 16 of the '140 Patent, including the claimed arrangement of a source providing a DC supply voltage at a set of DC terminals, and an inverter and load circuitry connected with the DC terminals and operative to provide an AC voltage at a pair of AC terminals with which is connected a gas discharge lamp.

57.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '140 Patent.

58.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '140 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

## COUNTERCLAIM IX

### (Declaratory Judgment of Invalidity of the '681 Patent)

59.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-58 of their Counterclaims as if fully set forth herein.

60.     By its Complaint, CFLT asserts that the '681 Patent is valid.  Counterclaim Plaintiffs have denied this allegation and contend that the '681 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

61.     The claims of the '681 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '681 Patent. As a non-limiting example, the claims of the '681 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,251,752, issued on February 17, 1981 to James B. Stolz (the "Stolz Patent") and U.S. Patent No. 4,244,013 issued on January 6, 1981 to Joseph P. Wotowiec (the "Wotowiec Patent").  The Stolz Patent and the Wotowiec Patent disclose and/or render obvious all elements of asserted claim 12 of the '681 Patent, including the claimed arrangement of a first sub-circuit adapted to connect with the power line voltage of an ordinary electric utility power line; a second sub-circuit connected with the DC terminals and operative to provide an AC voltage; a gas discharge lamp; a third sub-circuit connected between the AC terminals; and a physical structure combining the three sub-circuits and gas discharge lamp in a single rigid structure.  In view of

these references, the USPTO found in Reexamination Control No. 90/007,501 that there was a substantial question of patentability. Eventually, the USPTO entered a final office action rejecting claims 6-14, 16, and 17 as unpatentable. The USPTO vacated the reexamination proceedings in view of the final judgments of unenforceability of the '681 Patent.

62.    An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '681 Patent.

63.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '681 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

## COUNTERCLAIM X

### (Declaratory Judgment of Invalidity of the '680 Patent)

64.    Counterclaim Plaintiffs repeat and reallege Paragraphs 1-63 of their Counterclaims as if fully set forth herein.

65.    By its Complaint, CFLT asserts that the '680 Patent is valid. Counterclaim Plaintiffs have denied this allegation and contend that the '680 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

66.    The claims of the '680 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '680 Patent. As a non-limiting example, the claims of the '680 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,753,071 issued on August 14, 1973 to J. Engel (the "Engel Patent"). The Young Patent and the Engel Patent disclose and/or render obvious all elements of asserted claim 9 of the '680 Patent, including the claimed assembly of a rectifier sub-assembly having a pair of

36

AC input terminals; an inverter sub-assembly characterized by producing, across a pair of inverter terminals, a periodically alternating inverter voltage; a gas discharge lamp, and a screw base. In view of these references, among others, the USPTO found in Reexamination Control No. 90/007,984 there was a substantial question of patentability. The USPTO even entered a non-final office action rejecting original claims 9-22 and 26-32. Before a final rejection could be entered, the USPTO vacated the reexamination proceedings in view of the final judgments of unenforceability of the '680 Patent.

67. An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '680 Patent.

68. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '680 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

## **COUNTERCLAIM XI**

### **(Declaratory Judgment of Unenforceability of the Asserted Patents)**

69. Counterclaim Plaintiffs repeat and reallege Paragraphs 1-68 of their Counterclaims as if fully set forth herein.

70. By its Complaint, CFLT asserts that the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent (the "Asserted Patents") are enforceable. Counterclaim Plaintiffs have denied this allegation and contend that the Asserted Patents are unenforceable due to inequitable conduct during prosecution of the Asserted Patents and related patents in the family and/or infectious inequitable conduct.

71. All Asserted Patents were filed by Ole Nilssen, who is listed as the named inventor on the face of each of the Asserted Patents.

72.     The Asserted Patents were assigned to CFLT by its predecessors-in-interest. CFLT is in privity with the predecessors-in-interest through the Assignment chain.

73.     Numerous courts, including the Federal Circuit, have found the '464 Patent, the '681 Patent, and the '680 Patent unenforceable due to inequitable conduct.  *Nilssen v. Osram Sylvania*, Inc., 440 F. Supp. 2d 884, 893 (N.D. Ill. 2006) ("*OSRAM I*"), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007) ("*OSRAM II*"); *Nilssen v. Wal-Mart Stores, Inc.*, 2008 WL 11350028, at *1 (N.D. Ill. Mar. 17, 2008) ("*Wal-Mart*"); *Nilssen v. Wal-Mart Stores, Inc.*, 2011 WL 5429526 (Fed. Cir. Nov. 10, 2011) ("*Wal-Mart II*").  Although these holdings applied the pre-*Therasense* law on inequitable conduct, the totality of the patent applicant's repeated misconduct during prosecution that led to these findings, which occurred or were repeated during prosecution of all Asserted Patents, remains inequitable conduct under *Therasense*.

74.     Plaintiffs in *OSRAM I* accused all of OSRAM's CFLs of infringement of the patents-in-suit, including the '680 and '681 Patent.

75.     Plaintiffs' infringement theories in *OSRAM I* did not substantially differ between each accused CFL product.

76.     In February 2006, the *OSRAM I* court held a bench trial on inequitable conduct issues for a number of related patents issued to Nilssen, including the '680 and '681 Patents.

77.     The *OSRAM I* court made a number of factual determinations, including evaluating live witness testimony, and found the '680 and '681 Patents unenforceable due to inequitable conduct.

78.     The *OSRAM I* court held that the '680 and '681 Patents were unenforceable due to a false claim of priority during prosecution of those patents.

79.     The *OSRAM I* court observed testimony from the former Assistant Commissioner for Patents that "Nilssen's incorrect claim of priority to the effective date of March 20, 1978 was material to the prosecution of the applications issuing as the '637, '680, and '681 Patents, at least at the time he filed the applications, because it would allow Nilssen to potentially avoid prior art and obtain patent claims to which he would not otherwise be entitled" and found it to be "highly credible and unimpeached."

80.     The *OSRAM I* court also held that "Nilssen intended to mislead the PTO by incorrectly claiming priority dates" as evidenced by a letter he sent to his licensee "[j]ust days before this new claim of priority."  The court held that "[t]he Advance letter demonstrates that Nilssen intentionally misclaimed priority in these patents to avoid known prior art and to obtain 'effective basic patent protection.'  Nilssen's testimony to the contrary was unpersuasive."

81.     With regards to a second letter sent before the priority misclaims in the '680 and '681 Patents, the *OSRAM I* court held that "[t]his Advance letter demonstrates that Nilssen intentionally misclaimed priority in these patents to claim an earlier effective date to assure that Advance could not cancel its License Agreement.  Nilssen's testimony to the contrary was not credible."

82.     The *OSRAM I* court found that, "based on clear and convincing evidence, in light of the materiality and totality of circumstances as to Nilssen's intent to mislead, Nilssen's false claims of priority dates render Nilssen's repeated misconduct so culpable as to render the . . . '680, and '681 Patents unenforceable."

83.     The *OSRAM I* court also held that the '681 Patent was unenforceable for inequitable conduct based on a certain piece of prior art, known as the Stolz Patent, that "was highly material to the '681 and '067 Patents."  The court determined that "Nilssen had

knowledge of the Stolz Patent and of its materiality.  Nilssen failed to disclose the Stolz Patent with the intent to mislead the PTO; and, when he failed to do so, he was not acting in good faith. Nilssen's testimony to the contrary was not credible."

84.     The *OSRAM I* court also held that "Nilssen knew or should have known that this suit was baseless" and ordered the plaintiffs to pay over $5 million dollars in attorneys' fees and costs.

85.     In *OSRAM II* the Federal Circuit affirmed the inequitable conduct findings of the *OSRAM I* court and held that "[t]he district court found clear and convincing evidence of 'Nilssen's obvious intent to mislead.'"

86.     The Federal Circuit held that "we find an inference that Nilssen intended to deceive the PTO not unreasonable."

87.     While *OSRAM I* was pending, Nilssen asserted the '680, '681, and '464 Patents against Wal-Mart Stores, Inc. in the Northern District of Illinois.

88.     On March 17, 2008, the *Wal-Mart* court entered summary judgment that the '681, '680, and '464 Patents were all unenforceable for inequitable conduct "for the same reasons that Judge Darrah [in *OSRAM I*] held the other . . . patents in suit unenforceable."

89.     The *Wal-Mart* court further held that the case was exceptional and ordered Nilssen to pay defendants' attorneys' fees.

90.     The *Wal-Mart* court held that the Nilssen's misconduct "was intentional, material and repeated," "[f]ar too many judicial resources have been devoted to this losing litigation," and "[i]f this isn't an exceptional case, this court fails to see what is."

91.     The plaintiffs in *Wal-Mart*, who are predecessors-in-interest to CFLT, appealed the *Wal-Mart* court's decision to the Federal Circuit.

92.     On July 30, 2010, during the pendency of the *Wal-Mart* appeal, the plaintiffs in *Wal-Mart*, who are CFLT's predecessors-in-interest, submitted in amicus brief in the *Therasense* appeal.

93.     On May 25, 2011, during the pendency of the *Wal-Mart* appeal, the Federal Circuit, sitting *en banc*, rendered its decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).

94.     The plaintiffs in *Wal-Mart*, who are predecessors-in-interest to CFLT, had knowledge of the Federal Circuit's *Therasense* decision on or around May 25, 2011.

95.     While the *Wal-Mart* appeal was pending, the Federal Circuit asked the parties to submit briefs on how the *Therasense* decision might impact the appeal.

96.     The parties to the *Wal-Mart* appeal submitted their respective briefs to the Federal Circuit discussing the *Therasense* decision, and, on November 10, 2011, the Federal Circuit issued a Rule 36 affirmance of the *Wal-Mart* court's findings.

97.     The '680, '681, and '464 Patents were also subject to reexamination proceedings before the USPTO.

98.     During reexamination proceedings for the '681 Patent, on or around April 17, 2008, the USPTO issued an office action, *inter alia*, rejecting originally issued claim 12 of the '681 patent on multiple grounds.

99.     In view of the fact that various federal courts held that Nilssen had engaged in inequitable conduct related to the '680 and '681 Patents, the USPTO vacated the reexamination proceedings for the '680 and '681 Patents.

100.    In vacating the reexamination proceeding for the '681 Patent, the USPTO did not reverse or otherwise change the rejections set forth in the April 17, 2008 office action.  Nilssen,

CFLT's predecessor-in-interest, never sought to overcome or reverse the rejections set forth in the April 17, 2008 office action.

101.    Instead, Nilssen, CFLT's predecessor-in-interest, acquiesced to the vacating of the reexamination proceedings for the '680 and '681 Patents.

102.    Counterclaim Plaintiffs believed that all Asserted Patents were unenforceable in view of the *OSRAM I*, *OSRAM II*, *Wal-Mart* and *Wal-Mart II* decisions.  CFLT and/or its predecessors-in-interest had knowledge of these prior federal court decisions.  Counterclaim Plaintiffs thus believed that CFLT and/or its predecessors-in-interest would not assert the Asserted Patents against them.

103.    Counterclaim Plaintiffs also believed that the '680 and '681 Patents were unenforceable in light of the fact that Nilssen, CFLT's predecessor-in-interest, acquiesced to the USPTO's dismissal of the reexamination proceedings after those patents had been held unenforceable by federal courts.  CFLT and/or its predecessors-in-interest had knowledge of Nilssen's acquiescence to the dismissal of the reexamination proceedings.  Counterclaim Plaintiffs thus believed that CFLT and/or its predecessors-in-interest would not assert the Asserted Patents against them.

104.    Counterclaim Plaintiffs continued to sell CFL products after the *OSRAM I*, *OSRAM II*, *Wal-Mart*, and *Wal-Mart II* decisions.

105.    Counterclaim Plaintiffs continued to sell CFL products after the Federal Circuit's *Therasense* decision.

106.    Since the Federal Circuit issued its *Therasense* decision, CFLT and/or its predecessors-in-interest to the Asserted Patents were aware that OSRAM continued to sell CFL products.

107.   Since the Federal Circuit issued its *Therasense* decision, CFLT and/or its predecessors-in-interest to the Asserted Patents were aware that LEDVANCE continued to sell CFL products.

108.   Despite having knowledge of the *Therasense* decision and the fact that OSRAM and LEDVANCE continued to sell CFL products, CFLT and/or its predecessors-in-interest did not file a post-*Therasense* lawsuit alleging Counterclaim Plaintiffs' infringement of the Asserted Patents until the filing of the Complaint in this action.

109.   From the time that CFLT was purportedly assigned the Asserted Patents until the filing of the Complaint, CFLT was aware that OSRAM and/or LEDVANCE continued to sell CFL products.

110.   Some of the conduct during prosecution that was adjudged inequitable in the above cases with respect to the '464, '680, and '681 Patents is also present in the prosecution history of other Asserted Patents.

111.   For example, Nilssen submitted signed declarations to the USPTO falsely claiming that the '680 Patent, the '681 Patent, the '213 Patent, and the '140 Patent were all continuations-in-part of Application No. 05/890,586, filed on March 20, 1978. *See, e.g.*, D.I 15, Ex. 3 at 64-65; D.I. 16, Ex. 4 at 133-134. The *OSRAM I*, *OSRAM II*, *Wal-Mart*, and *Wal-Mart II* courts found that these patents were not entitled to this priority date.

112.   As evidenced by the previous factual findings in *OSRAM I*, Nilssen's false declarations were intentional. Upon information and belief, Nilssen sent correspondence to third parties describing his likely inability to have the Asserted Patents granted based on their priority date and existing prior art. Soon after, Nilssen submitted his first false declaration with the false priority claims.

113.    The intentionally false declarations filed by Nilssen were material to the USPTO's determination of patentability and its grant of the Asserted Patents.   By falsely claiming priority to 1978, the applicant limited the prior art references that the examiner could use during prosecution of the Asserted Patents.   Indeed, as a non-limiting example, the reexamination proceedings for the '680 Patent that resulted in a final determination of unpatentability relied on a reference with a 1979 priority date (the Stolz Patent, discussed above). This reference would not have been available during prosecution based on Nilssen's false priority claim.

114.    Further, the Federal Circuit held in *Therasense* that "[a]lthough but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in cases of affirmative egregious misconduct. … '[T]here is no room to argue that submission of false affidavits is not material.'"   *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (quoting *Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1571 (Fed. Cir. 1983)).

115.    The CFL products accused of infringement in this case are substantially similar to those CFL products accused in *OSRAM I*.

116.    The CFL products accused of infringement in this case are substantially similar to those CFL products accused in *OSRAM III*.

117.    Plaintiff's infringement theory is not substantially different in this case compared to the infringement theories in *OSRAM I*.

118.    Plaintiff's infringement theory is not substantially different in this case compared to the infringement theories in *OSRAM III*.

119.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent are unenforceable for inequitable conduct.

## PRAYER FOR RELIEF

Wherefore, Counterclaim Plaintiffs respectfully request that the Court enter judgment in their favor and award them the following relief:

A.    Declare that Counterclaim Plaintiffs have not infringed any valid claims of the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent;

B.    Declare that the claims of the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent are invalid;

C.    Enjoin CFLT, its successors and assigns, and all those in privity therewith from asserting the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent against Counterclaim Plaintiffs, their successors and assigns, or any of their customers or suppliers;

D.    Find this an exceptional case and award Counterclaim Plaintiffs their attorneys' fees and costs under 35 U.S.C. § 285; and

E.    Grant Counterclaim Plaintiffs such other and further relief as the Court deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Counterclaim Plaintiffs demand a trial by jury of any and all issues in this action so triable.

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Kevin P. Martin
Srikanth K. Reddy
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Monte M.F. Cooper
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
(650) 752-3100

Dated: September 3, 2019