## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CFL TECHNOLOGIES LLC,<br><br>         Plaintiff,<br><br>    v.<br><br>OSRAM SYLVANIA, INC. and LEDVANCE, LLC,<br>         Defendants. | C.A. No. 18-1445-RGA |

## ANSWER TO COUNTERCLAIMS

Plaintiff, CFL Technologies, LLC ("CFLT" or "Counterclaim Defendant"), hereby responds to OSRAM SYLVANIA, INC. ("OSRAM") and LEDVANCE, LLC's ("LEDVANCE") (collectively, "Counterclaim Plaintiffs") counterclaims as follows. All averments not expressly admitted are denied.

## THE PARTIES

1.     Counterclaim Plaintiff OSRAM is a Delaware corporation with headquarters in Wilmington, Massachusetts, with its principal place of business located at 100 Endicott Street, Danvers, Massachusetts 01923.

**Response:**     CFLT admits that OSRAM is a Delaware corporation with headquarters in Wilmington, Massachusetts. CFLT lacks knowledge or information sufficient to form a belief as to the truth of whether OSRAM has a principal place of business located at 100 Endicott Street, Danvers, Massachusetts 01923, and, therefore, denies the allegation on that basis.

2.     Counterclaim Plaintiff LEDVANCE is a Delaware corporation with headquarters in Wilmington, Massachusetts, with its principal place of business located at 200 Ballardvale Street, Wilmington, Massachusetts 01887.

**Response:**     CFLT admits that LEDVANCE is a Delaware corporation with headquarters in Wilmington, Massachusetts. CFLT lacks knowledge or information sufficient to form a belief as

to the truth of whether LEDVANCE has a principal place of business located at 200 Ballardvale

Street, Wilmington, Massachusetts 01887, and therefore, denies the allegation on that basis.

3.      3. [*sic*] On information and belief, CFLT is an Illinois limited liability company, with a principal place of business located at 222 Merchandise Mart Plaza, Suite 1225, Chicago, Illinois 60654.

**Response:**      Admitted.

## JURISDICTION AND VENUE

4.      These Counterclaims arise under the Patent Laws of the United States, 35 U.S.C.§ 100 *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, based upon an actual controversy between the parties that the patents asserted by CFLT are invalid, not infringed, and/or unenforceable.

**Response:**      This paragraph contains conclusions of law to which no response is required. To

the extent a response is required, CFLT does not contest that this Court has declaratory judgment

jurisdiction over the disputes concerning the Asserted Patents (defined below). CFLT denies the

allegations in this paragraph to the extent there is any suggestion that any Asserted Patent is

invalid, not infringed, and/or unenforceable.

5.      In view of CFLT filing its Complaint, and in view of Counterclaim Plaintiffs' defenses to the Complaint, there exists an actual and justiciable controversy between the parties regarding the validity and alleged infringement of U.S. Patent Nos. 6,459,213 ("the '213 Patent"), 6,172,464 ("the '464 Patent"), 5,757,140 ("the '140 Patent"), 5,510,681 ("the '681 Patent") and 5,510,680 ("the '680 Patent") (collectively "the Asserted Patents").

**Response:**      Admitted.

6.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. § 1, *et seq*.

**Response:**      This paragraph contains conclusions of law to which no response is required. To

the extent a response is required, CFLT does not contest that this Court has subject matter

jurisdiction over the disputes concerning the Asserted Patents.

7.      Counterclaim Defendant has consented to personal jurisdiction for the Counterclaims by filing of the original Complaint in this matter.

**Response:**      Admitted.

8.      Venue is proper in this District under 28 U.S.C. § 1404 because CFLT filed its Complaint in this District.

**Response:**      This paragraph contains conclusions of law to which no response is required. To the extent a response is required, CFLT does not contest that venue is proper in this Court.

## COUNTERCLAIM I

9.      Counterclaim Plaintiffs repeat and reallege Paragraphs 1-8 of their Counterclaims as if fully set forth herein.

**Response:**      CFLT incorporates its responses to Paragraphs 1-8 as if fully set forth herein.

10.      By its Complaint, CFLT asserts that Counterclaim Plaintiffs have infringed the '213 Patent.

**Response:**      Admitted.

11.      CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '213 Patent. *See* D.I. 1 ¶ 67.

**Response:**      CFLT has specifically accused a CFL model described as "Sylvania 29490 23-Watt CFL Mini Twist Light Bulb" ("Sylvania Sample CFL") of infringement. (*See* D.I. 1 at ¶¶ 26, 66-75.) CFLT has identified a number of characteristics of the Sylvania Sample CFL possessed by all, or substantially all, of Counterclaim Plaintiffs' CFL products. (*See* D.I. 1 at ¶ 29.) As stated in the Complaint, "CFLT intends to take discovery related to the circuit, operation and sales of every CFL sold by Defendants during the relevant time periods." (D.I. 1 at ¶ 30.) Otherwise, without the benefit of discovery, CFLT has not yet been able to confirm that all of Counterclaim Plaintiff's CFLs are infringing. As such, CFLT lacks knowledge or information sufficient to form a belief as to the truth of whether all of Counterclaim Plaintiff's CFLs are infringing, and, therefore, denies the allegations in this paragraph to the extent of any suggestion that the Complaint alleges infringement by all CFLs sold by Counterclaim Plaintiffs.

12.     Counterclaim Plaintiffs have denied CFLT's claim of infringement of the '213 Patent and contend that their CFL products, such as the Sylvania Sample CFL, do not infringe one or more valid asserted claims of the '213 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**Response:**     CFLT admits that Counterclaim Plaintiffs have denied infringement, as alleged.

Otherwise, denied to the extent of any suggestion of non-infringement or invalidity.

13.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 19 of the '213 Patent (which was specifically asserted in the Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include an arrangement that includes a source that provides a substantially constant magnitude DC supply voltage. The accused products also do not satisfy the requirement of claim 19 where for a brief period starting at a given point in time, the AC bus voltage being of a first relatively high magnitude; after the brief period, the AC bus voltage being of a second relatively low magnitude.

**Response:**     Denied.

14.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning alleged infringement of the '213 Patent.

**Response:**     Admitted.

15.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from the Court that the '213 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

**Response:**     Denied.

## COUNTERCLAIM II

16.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-15 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-15 as if fully set forth herein.

17.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs have infringed the '464 Patent.

**Response:**     Admitted.

18.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '464 Patent. *See* D.I. 1 ¶ 108.

**Response:**     CFLT has specifically accused the Sylvania Sample CFL of infringement. (*See* D.I.

1 at ¶¶ 26, 107-123.) CFLT has identified a number of characteristics of the Sylvania Sample CFL

possessed by all, or substantially all, of Counterclaim Plaintiffs' CFL products. (*See* D.I. 1 at ¶

29.) As stated in the Complaint, "CFLT intends to take discovery related to the circuit, operation

and sales of every CFL sold by Defendants during the relevant time periods." (D.I. 1 at ¶ 30.)

Otherwise, without the benefit of discovery, CFLT has not yet been able to confirm that all of

Counterclaim Plaintiff's CFLs are infringing. As such, CFLT lacks knowledge or information

sufficient to form a belief as to the truth of whether all of Counterclaim Plaintiff's CFLs are

infringing, and, therefore, denies the allegations in this paragraph to the extent of any suggestion

that the Complaint alleges infringement by all CFLs sold by Counterclaim Plaintiffs.

19.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '464 Patent and contend that they do not infringe one or more valid asserted claims of the '464 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**Response:**     CFLT admits that Counterclaim Plaintiffs have denied infringement, as alleged.

Otherwise, denied to the extent of any suggestion of non-infringement or invalidity.

20.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 3 of the '464 Patent (specifically asserted in CFLT's Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused CFL products, including the Sylvania Sample CFL, do not include the claimed structure including an electronic sub-assembly having input terminals and output terminals wherein the frequency of the alternating voltage being distinctly higher than that of the AC power line voltage; the electronic subassembly being additionally characterized by including a transistor through which flows unidirectional current pulses at a periodic rate equal to that of the alternating voltage, where each current pulse having a duration distinctly shorter than half of the complete cycle of the alternating voltage, as required by claim 3.

**Response:**     Denied.

21.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '464 Patent.

**Response:**      Admitted.

22.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Counterclaim Plaintiffs are entitled to judgment from the Court that the '464 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

**Response:**      Denied.

## COUNTERCLAIM III

23.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-22 of their Counterclaims as if fully set forth herein.

**Response:**      CFLT incorporates its responses to Paragraphs 1-22 as if fully set forth herein.

24.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs infringe the '140 Patent.

**Response:**      Admitted.

25.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '140 Patent. *See* D.I. 1 ¶ 152.

**Response:**      CFLT has specifically accused the Sylvania Sample CFL of infringement. (*See* D.I. 1 at ¶¶ 26, 151-159.) CFLT has identified a number of characteristics of the Sylvania Sample CFL possessed by all, or substantially all, of Counterclaim Plaintiffs' CFL products. (*See* D.I. 1 at ¶ 29.) As stated in the Complaint, "CFLT intends to take discovery related to the circuit, operation and sales of every CFL sold by Defendants during the relevant time periods." (D.I. 1 at ¶ 30.) Otherwise, without the benefit of discovery, CFLT has not yet been able to confirm that all of Counterclaim Plaintiff's CFLs are infringing. As such, CFLT lacks knowledge or information sufficient to form a belief as to the truth of whether all of Counterclaim Plaintiff's CFLs are infringing, and, therefore, denies the allegations in this paragraph to the extent of any suggestion that the Complaint alleges infringement by all CFLs sold by Counterclaim Plaintiffs.

26.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '140 Patent and contend that they do not infringe one or more valid asserted claims of the '140 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**Response:**     CFLT admits that Counterclaim Plaintiffs have denied infringement, as alleged.

Otherwise, denied to the extent of any suggestion of non-infringement or invalidity.

27.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 16 of the '140 Patent (specifically asserted in CFLT's Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include an arrangement wherein a measured frequency of the AC voltage is substantially higher than the power line voltage, as required by claim 16.

**Response:**     Denied.

28.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '140 Patent.

**Response:**     Admitted.

29.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '140 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

**Response:**     Denied.

## COUNTERCLAIM IV

30.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-29 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-29 as if fully set forth herein.

31.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs infringe the '681 Patent.

**Response:**     Admitted.

32.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '681 Patent. *See* D.I. 1 ¶ 192.

**Response:**     CFLT has specifically accused the Sylvania Sample CFL of infringement. (*See* D.I.

1 at ¶¶ 26, 191-204.) CFLT has identified a number of characteristics of the Sylvania Sample CFL

possessed by all, or substantially all, of Counterclaim Plaintiffs' CFL products. (*See* D.I. 1 at ¶

29.) As stated in the Complaint, "CFLT intends to take discovery related to the circuit, operation

and sales of every CFL sold by Defendants during the relevant time periods." (D.I. 1 at ¶ 30.)

Otherwise, without the benefit of discovery, CFLT has not yet been able to confirm that all of

Counterclaim Plaintiff's CFLs are infringing. As such, CFLT lacks knowledge or information

sufficient to form a belief as to the truth of whether all of Counterclaim Plaintiff's CFLs are

infringing, and, therefore, denies the allegations in this paragraph to the extent of any suggestion

that the Complaint alleges infringement by all CFLs sold by Counterclaim Plaintiffs.

33.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '681 Patent and contend that they do not infringe one or more valid asserted claims of the '681 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**Response:**     CFLT admits that Counterclaim Plaintiffs have denied infringement, as alleged.

Otherwise, denied to the extent of any suggestion of non-infringement or invalidity.

34.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 12 of the '681 Patent (specifically asserted in CFLT's complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include an arrangement comprising a second sub-circuit connected with the DC terminals and operative to provide an AC voltage between a pair of AC terminals wherein the AC voltage being characterized by having a fundamental period: (i) during a first part of which its instantaneous magnitude remains substantially constant at a first given level; and (ii) during a second part of which its instantaneous magnitude remains substantially constant at a second given level, the second part having a total duration substantially equal to that of the first part as well as distinctly longer than one fourth the total duration of the whole fundamental period, as required by claim 12.

**Response:**     Denied.

35.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '681 Patent.

**Response:**     Admitted.

36.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Counterclaim Plaintiffs are entitled to judgment from this Court that the '681 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs.

**Response:**     Denied.

## COUNTERCLAIM V

37.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-36 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-36 as if fully set forth herein.

38.     By its Complaint, CFLT asserts that Counterclaim Plaintiffs infringe the '680 Patent.

**Response:**     Admitted.

39.     CFLT has accused all of Counterclaim Plaintiffs' CFL products, including the Sylvania Sample CFL, of infringing the '680 Patent. *See* D.I. 1 ¶ 240.

**Response:**     CFLT has specifically accused the Sylvania Sample CFL of infringement. (*See* D.I. 1 at ¶¶ 26, 239-255.) CFLT has identified a number of characteristics of the Sylvania Sample CFL possessed by all, or substantially all, of Counterclaim Plaintiffs' CFL products. (*See* D.I. 1 at ¶ 29.) As stated in the Complaint, "CFLT intends to take discovery related to the circuit, operation and sales of every CFL sold by Defendants during the relevant time periods." (D.I. 1 at ¶ 30.) Otherwise, without the benefit of discovery, CFLT has not yet been able to confirm that all of Counterclaim Plaintiff's CFLs are infringing. As such, CFLT lacks knowledge or information sufficient to form a belief as to the truth of whether all of Counterclaim Plaintiff's CFLs are infringing, and, therefore, denies the allegations in this paragraph to the extent of any suggestion that the Complaint alleges infringement by all CFLs sold by Counterclaim Plaintiffs.

40.     Counterclaim Plaintiffs have denied CFLT's claim that their CFL products, including the Sylvania Sample CFL, infringe the '680 Patent and contend that they do not infringe one or more valid asserted claims of the '680 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**Response:**     CFLT admits that Counterclaim Plaintiffs have denied infringement, as alleged.

Otherwise, denied to the extent of any suggestion of non-infringement or invalidity.

41.     As a non-limiting example, Counterclaim Plaintiffs do not infringe claim 9 of the '680 Patent (specifically asserted by CFLT's Complaint) under 35 U.S.C. § 271 because, *inter alia*, Counterclaim Plaintiffs' accused products, including the Sylvania Sample CFL, do not include a fundamental frequency substantially higher than the AC power line frequency, an inverter sub-assembly being characterized by producing, across a pair of inverter terminals, a periodically alternating inverter voltage having a basic period consisting of: (i) a first segment during which its magnitude remains approximately constant at a positive potential; (ii) a second segment during which its magnitude decreases in a substantially continuous manner; (iii) a third segment during which its magnitude remains approximately constant at a negative potential; and (iv) a fourth segment during which its magnitude increases in a substantially continuous manner, as required by claim 9.

**Response:**     Denied.

42.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the alleged infringement of the '680 Patent.

**Response:**     Admitted.

43.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '680 Patent is not infringed, directly or indirectly, by Counterclaim Plaintiffs' CFL products, such as the Sylvania Sample CFL.

**Response:**     Denied.

## COUNTERCLAIM VI

44.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-43 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-43 as if fully set forth herein.

45.     By its Complaint, CFLT asserts that the '213 Patent is valid. Counterclaim Plaintiffs have denied this allegation and contend that the '213 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     CFLT admits that the '213 Patent is valid and that Counterclaim Plaintiffs contest

validity. Otherwise, denied to the extent of any suggestion that the '213 Patent is invalid.

46.     The claims of the '213 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '213 Patent. As a non-limiting example, the claims of the '213 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,733,541 issued on May 15, 1973 to R. Elms (the "Elms Patent"). The Young Patent and the Elms Patent disclose and/or render obvious all elements of asserted claim 19 of the '213 Patent, including the claimed arrangement of a DC voltage supply source, inverter circuit, and a number of lamp-ballast series combinations.

**Response:**     Denied.

47.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '213 Patent.

**Response:**     Admitted.

48.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '213 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     Denied.

## COUNTERCLAIM VII

49.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-48 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-48 as if fully set forth herein.

50.     By its Complaint, CFLT asserts that the '464 Patent is valid. Counterclaim Plaintiffs have denied this allegation and contend that the '464 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     CFLT admits that the '464 Patent is valid and that Counterclaim Plaintiffs contest

validity. Otherwise, denied to the extent of any suggestion that the '464 Patent is invalid.

51.     The claims of the '464 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '464 Patent. As a non-limiting example, the claims of the '464 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,733,541 issued on May 15, 1973 to R. Elms (the "Elms Patent"). The Young Patent and Elms Patent disclose and/or render obvious all elements of asserted claim 3 of the '464 Patent, including the claimed structure with a screw-base, a fluorescent lamp having lamp terminals and plural cylindrical lamp segments, an electronic sub-assembly having input terminals and output terminals, and housing means mounted rigidly on the screw base.

**Response:**     Denied.

52.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '464 Patent.

**Response:**     Admitted.

53.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '464 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     Denied.

## COUNTERCLAIM VIII

54.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-53 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-53 as if fully set forth herein.

55.     By its Complaint, CFLT asserts that the '140 Patent is valid. Counterclaim Plaintiffs have denied this allegation and contend that the '140 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     CFLT admits that the '140 Patent is valid and that Counterclaim Plaintiffs contest

validity. Otherwise, denied to the extent of any suggestion that the '140 Patent is invalid.

56.     The claims of the '213 [*sic*] Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '140 Patent. As a non-limiting example, the claims of the '140 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,733,541 issued on May 15, 20973 [*sic*] to R. Elms (the "Elms Patent"). The Young Patent and Elms Patent disclose and/or render obvious all elements of asserted claim 16 of the '140 Patent, including the claimed arrangement of a source providing a DC supply voltage at a set of DC terminals, and an inverter and load circuitry connected with the DC terminals and operative to provide an AC voltage at a pair of AC terminals with which is connected a gas discharge lamp.

**Response:**     Denied.

57.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '140 Patent.

**Response:**     Admitted.

58.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '140 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     Denied.

## COUNTERCLAIM IX

59.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-58 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-58 as if fully set forth herein.

60.     By its Complaint, CFLT asserts that the '681 Patent is valid. Counterclaim Plaintiffs have denied this allegation and contend that the '681 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     CFLT admits that the '681 Patent is valid and that Counterclaim Plaintiffs contest

validity. Otherwise, denied to the extent of any suggestion that the '681 Patent is invalid.

61.     The claims of the '681 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '681 Patent. As a non-limiting example, the claims of the '681 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,251,752, issued on February 17, 1981 to James B. Stolz (the "Stolz Patent") and U.S. Patent No. 4,244,013 issued on January 6, 1981 to Joseph P. Wotowiec (the "Wotowiec Patent"). The Stolz Patent and the Wotowiec Patent disclose and/or render obvious all elements of asserted claim 12 of the '681 Patent, including the claimed arrangement of a first sub-circuit adapted to connect with the power line voltage of an ordinary electric utility power line; a second sub-circuit connected with the DC terminals and operative to provide an AC voltage; a gas discharge lamp; a third sub-circuit connected between the AC terminals; and a physical structure combining the three sub-circuits and gas discharge lamp in a single rigid structure. In view of these references, the USPTO found in Reexamination Control No. 90/007,501 that there was a substantial question of patentability. Eventually, the USPTO entered a final office action rejecting claims 6-14, 16, and 17 as unpatentable. The USPTO vacated the reexamination proceedings in view of the final judgments of unenforceability of the '681 Patent.

**Response:**     Denied.

62.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '681 Patent.

**Response:**     Admitted.

63.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '681 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     Denied.

### COUNTERCLAIM X

64.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-63 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-63 as if fully set forth herein.

65.     By its Complaint, CFLT asserts that the '680 Patent is valid. Counterclaim Plaintiffs have denied this allegation and contend that the '680 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     CFLT admits that the '680 Patent is valid and that Counterclaim Plaintiffs contest

validity. Otherwise, denied to the extent of any suggestion that the '680 Patent is invalid.

66.     The claims of the '680 Patent are invalid in light of prior art that was published or was otherwise available to the public before the earliest possible priority date of the '680 Patent. As a non-limiting example, the claims of the '680 Patent are anticipated and/or rendered obvious by U.S. Patent No. 4,337,414, issued on June 29, 1982 to Robert G. Young (the "Young Patent") and U.S. Patent No. 3,753,071 issued on August 14, 1973 to J. Engel (the "Engel Patent"). The Young Patent and the Engel Patent disclose and/or render obvious all elements of asserted claim 9 of the '680 Patent, including the claimed assembly of a rectifier sub-assembly having a pair of AC input terminals; an inverter sub-assembly characterized by producing, across a pair of inverter terminals, a periodically alternating inverter voltage; a gas discharge lamp, and a screw base. In view of these references, among others, the USPTO found in Reexamination Control No. 90/007,984 there was a substantial question of patentability. The USPTO even entered a non-final office action rejecting original claims 9-22 and 26-32. Before a final rejection could be entered, the USPTO vacated the reexamination proceedings in view of the final judgments of unenforceability of the '680 Patent.

**Response:**     Denied.

67.     An actual and justiciable controversy has thus arisen between CFLT and Counterclaim Plaintiffs concerning the validity of the '680 Patent.

**Response:**     Admitted.

68.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Counterclaim Plaintiffs are entitled to judgment from this Court that the '680 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

**Response:**     Denied.

## COUNTERCLAIM XI

69.     Counterclaim Plaintiffs repeat and reallege Paragraphs 1-68 of their Counterclaims as if fully set forth herein.

**Response:**     CFLT incorporates its responses to Paragraphs 1-68 as if fully set forth herein.

70.     By its Complaint, CFLT asserts that the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent (the "Asserted Patents") are enforceable. Counterclaim Plaintiffs have denied this allegation and contend that the Asserted Patents are unenforceable due to inequitable conduct during prosecution of the Asserted Patents and related patents in the family and/or infectious inequitable conduct.

**Response:**     CFLT admits that the Asserted Patents are enforceable and that Counterclaim Plaintiffs contest the enforceability of the Asserted Patents. Otherwise, denied to the extent of any suggestion that any of the Asserted Patents are unenforceable.

71.     All Asserted Patents were filed by Ole Nilssen, who is listed as the named inventor on the face of each of the Asserted Patents.

**Response:**     Admitted.

72.     The Asserted Patents were assigned to CFLT by its predecessors-in-interest. CFLT is in privity with the predecessors-in-interest through the Assignment chain.

**Response:**     CFLT admits that the Asserted Patents were assigned to CFLT. CFLT denies the allegations of this paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents.

73.     Numerous courts, including the Federal Circuit, have found the '464 Patent, the '681 Patent, and the '680 Patent unenforceable due to inequitable conduct. *Nilssen v. Osram Sylvania, Inc*., 440 F. Supp. 2d 884, 893 (N.D. Ill. 2006) ("*OSRAM I*"), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007) ("*OSRAM II*"); *Nilssen v. Wal-Mart Stores, Inc*., 2008 WL 11350028, at *1 (N.D. Ill. Mar. 17, 2008) ("*Wal-Mart*"); *Nilssen v. Wal-Mart Stores, Inc*., 2011 WL 5429526 (Fed. Cir. Nov. 10, 2011) ("*Wal-Mart II*"). Although these holdings applied the pre-*Therasense* law on inequitable conduct, the totality of the patent applicant's repeated misconduct during prosecution that led to these findings, which occurred or were repeated during prosecution of all Asserted Patents, remains inequitable conduct under *Therasense*.

**Response:**     CFLT admits that the District Court for the Northern District of Illinois found the '681 and '680 Patents unenforceable in *Osram I*, and the '464 Patent unenforceable in *Wal-Mart*. CFLT further admits that the *Osram I* decision was affirmed in *Osram II*. CFLT denies the allegations in this paragraph to the extent of any suggestion that the *Wal-Mart II* decision resulted from a direct appeal of the *Wal-Mart* decision. CFLT admits that the *Osram I*, *Osram II* and *Wal-Mart* decisions all applied pre-*Therasense* law on inequitable conduct. CFLT denies that any misconduct occurred during prosecution of any prosecution of the Asserted Patents, or that any prosecution conduct concerning the Asserted Patents is inequitable under *Therasense*.

74.     Plaintiffs in *OSRAM I* accused all of OSRAM's CFLs of infringement of the patents-in-suit, including the '680 and '681 Patent.

**Response:**     CFLT admits that OSRAM CFLs were accused of infringing the '680 and '681 Patents in *OSRAM I*, but lacks knowledge or information sufficient to form a belief as to the truth of whether all of OSRAM's CFLs were accused of infringing those patents, and, therefore, denies the allegation on that basis.

75.     Plaintiffs' infringement theories in *OSRAM I* did not substantially differ between each accused CFL product.

**Response:**     In *OSRAM I*, plaintiffs in that case accused at least the following OSRAM CFL models of infringing the '681 and '680 Patents: CF23 EL/TWIST; CF23 EL/830; AT7912 12V 10/CS 1/SKU; AT7924 24V 10/CS 1/SKU; QT1X18120CF 120V 20/CS 1/SKU; QT1X18277CF 277V 20/CS 1/SKU; QT1X26120CF 120V 20/CS 1/SKU; QT1X26277CF 277V 20/CS 1/SKU; QT2X18120CF 120V 20/CS 1/SKU; QT2X18277CF 277V; 20/CS 1/SKU; QT2X26120CF i20v 20/CS 1/SKU; QT2X26277CF 277V 20/CS 1/SKU; QTP12X13CFUNVBS; QTP12X13CFUNVQS; QTP12X13CFUNVTS; QTP12X18CFUNVBS, QTP12.X18CFUNVQS; QTP12X18CFUNVTS; QTP12XCFUNVBM; QTP12XCFUNVPM; QTP1X13CF120BS, QTP1X13CF120QS; QTP1X13CF120TS; QTP1X13CF277BS; QTP1X13CF277QS; QTP1X13CF277TS; QTP1X18CF120BS; QTP1X18CF120QS; QTP1X18CF120TS; QTP1X18CF277BS; QTP1X18CF277QS; QTP1X18CF277TS; QTP1X263242CFUNVBS; QTP1X263242CFUNVQS; QTP1X263242CFUNVTS; QTP1X26CF120BS; QTP1X26CF120QS; QTP1X26CF120TS; QTP1X26CF277BS; QTP1X26CF277QS; QTP1X26CF277TS; QTP1X32CF120BS; QTP1X32CF120QS; QTPIX32CF120TS; QTP1X32CF277BS; QTPIX32CF277QS; QTP1X32CF277TS; QTP1X42CF120BS; QTP1X42CF120QS; QTP1X42CF120TS; QTP1X42CF277BS; QTP1X42CF277QS; QTP1X42CF277TS; QTP1X57CFUNVBM; QTP1X57CFUNVPM; QTP2X13CF120BS;

QTP2X13CF120QS; QTP2X13CF120TS; QTP2X13CF277BS; QTP2X13CF277QS;

QTP2X13CF277TS; QTP2X18CF120BS; QTP2X18CF120QS; QTP2X18CF120TS;

QTP2X18CF277BS; QTP2X18CF277QS; QTP2X18CF277TS; QTP2X263242CFUNVBM;

QTP2X263242UNVBM; QTP2X263242UNVPM; QTP2X263242UNVTM;

QTP2X26CF120BS; QTP2X26CF120QS; QTP2X26CF120TS; QTP2X26CF277BS;

QTP2X26CF277QS; QTP2X26CF277TS; QTP2X26CFUNVBS; QTP2X26CFUNVQS; and

QTP2X26CFUNVTS. Plaintiffs in *OSRAM I* reserved the right to modify or supplement the

foregoing list as discovery progressed. Further, numerous OSRAM products were listed in

OSRAM sales data, but product information, to the knowledge of plaintiffs in *OSRAM I*, had not

been provided. CFLT admits that CF23 EL/TWIST and CF23 EL/830 were argued to be

representative of other models listed above for purposes of the infringement analysis for the '681

and '680 Patents. CFLT denies the allegations in this paragraph to the extent of any suggestion

that the infringement analysis for claim 12 of the '681 Patent and claim 9 of the '680 Patent were

substantially similar.

76.    In February 2006, the *OSRAM I* court held a bench trial on inequitable conduct
issues for a number of related patents issued to Nilssen, including the '680 and '681 Patents.

**Response:**    Admitted.

77.    The *OSRAM I* court made a number of factual determinations, including evaluating
live witness testimony, and found the '680 and '681 Patents unenforceable due to inequitable
conduct.

**Response:**    CFLT admits that the *OSRAM I* court found the '680 and '681 Patents

unenforceable due to inequitable conduct. CFLT denies the allegations in this paragraph to the

extent of any suggestion that the unenforceability determinations in *OSRAM I* did not result from

the application of obsolete pre-*Therasense* law to the evidence adduced at trial.

78. The *OSRAM I* court held that the '680 and '681 Patents were unenforceable due to a false claim of priority during prosecution of those patents.

**Response:** CFLT admits that the *OSRAM I* court held that the '680 and '681 Patents were unenforceable due to a recitation of patent ancestry to a 1978 application. CFLT further admits that the *OSRAM I* court stated that "Nilssen's claim of priority to the effective date of March 20, 1978, in the … '680[] and '681 Patents were false because the cross-reference requirement was not satisfied." CFLT denies the allegations in this paragraph to the extent of any suggestion that Nilssen ever attempted to claim an improper priority date for any claim of the '680 and '681 Patents, that Nilssen possessed deceptive intent by listing a 1978 application in his recitation of patent ancestry, or that the recitation of ancestry in either patent was inaccurate. CFLT further denies the allegations in this paragraph to the extent of any suggestion that Nilssen's recitation of ancestry could be deemed inequitable conduct under the standards of *Therasense*.

79. The *OSRAM I* court observed testimony from the former Assistant Commissioner for Patents that "Nilssen's incorrect claim of priority to the effective date of March 20, 1978 was material to the prosecution of the applications issuing as the '637, '680, and '681 Patents, at least at the time he filed the applications, because it would allow Nilssen to potentially avoid prior art and obtain patent claims to which he would not otherwise be entitled" and found it to be "highly credible and unimpeached."

**Response:** CFLT admits that the quotations in this paragraph from the *OSRAM I* court are accurate. CFLT denies the allegations in this paragraph to the extent of any suggestion that Nilssen ever attempted to claim an improper priority date for any claim of the '680 and '681 Patents, that Nilssen possessed deceptive intent by listing a 1978 application in his recitation of patent ancestry, or that the recitation of ancestry in either patent was inaccurate. CFLT further denies the allegations in this paragraph to the extent of any suggestion that Nilssen's recitation of ancestry could be deemed inequitable conduct under the standards of *Therasense*.

80.     The *OSRAM I* court also held that "Nilssen intended to mislead the PTO by incorrectly claiming priority dates" as evidenced by a letter he sent to his licensee "[j]ust days before this new claim of priority." The court held that "[t]he Advance letter demonstrates that Nilssen intentionally misclaimed priority in these patents to avoid known prior art and to obtain 'effective basic patent protection.' Nilssen's testimony to the contrary was unpersuasive."

**Response:**     CFLT admits that the quotations in this paragraph from the *OSRAM I* court are accurate. CFLT denies the allegations in this paragraph to the extent of any suggestion that Nilssen ever attempted to claim an improper priority date for any claim of the '680 and '681 Patents, that Nilssen possessed deceptive intent by listing a 1978 application in his recitation of patent ancestry, or that the recitation of ancestry in either patent was inaccurate. CFLT further denies the allegations in this paragraph to the extent of any suggestion that Nilssen's recitation of ancestry could be deemed inequitable conduct under the standards of *Therasense*. CFLT additionally denies the allegations in this paragraph to the extent of any suggestion that the referenced February 19, 1993 letter in the *OSRAM I* decision had any relevance to Nilssen's recitation of patent ancestry for the '680 or '681 Patents; that letter was cited by the *OSRAM I* court in reference to other patents.

81.     With regards to a second letter sent before the priority misclaims in the '680 and '681 Patents, the *OSRAM I* court held that "[t]his Advance letter demonstrates that Nilssen intentionally misclaimed priority in these patents to claim an earlier effective date to assure that Advance could not cancel its License Agreement. Nilssen's testimony to the contrary was not credible."

**Response:**     CFLT admits that the quotations in this paragraph from the *OSRAM I* court are accurate. CFLT denies the allegations in this paragraph to the extent of any suggestion that Nilssen ever attempted to claim an improper priority date for any claim of the '680 and '681 Patents, that Nilssen possessed deceptive intent by listing a 1978 application in his recitation of patent ancestry, or that the recitation of ancestry in either patent was inaccurate. CFLT further denies the allegations in this paragraph to the extent of any suggestion that Nilssen's recitation of ancestry could be deemed inequitable conduct under the standards of *Therasense*. CFLT additionally denies the allegations in this paragraph to the extent of any suggestion that Nilssen sent a February 19, 1993 letter to Advance before reciting ancestry to a 1978 application during prosecution of the '680 Patent on December 18, 1992 or during prosecution for the parent application of the '681 Patent on July 12, 1992.

82.     The *OSRAM I* court found that, "based on clear and convincing evidence, in light of the materiality and totality of circumstances as to Nilssen's intent to mislead, Nilssen's false claims of priority dates render Nilssen's repeated misconduct so culpable as to render the . . . '680, and '681 Patents unenforceable."

**Response:**     CFLT admits that the quotations in this paragraph from the *OSRAM I* court are accurate. CFLT denies the allegations in this paragraph to the extent of any suggestion that Nilssen ever attempted to claim an improper priority date for any claim of the '680 and '681 Patents, that Nilssen possessed deceptive intent by listing a 1978 application in his recitation of patent ancestry, or that the recitation of ancestry in either patent was inaccurate. CFLT further denies the allegations in this paragraph to the extent of any suggestion that Nilssen's recitation of ancestry could be deemed inequitable conduct under the standards of *Therasense*.

83.     The *OSRAM I* court also held that the '681 Patent was unenforceable for inequitable conduct based on a certain piece of prior art, known as the Stolz Patent, that "was highly material to the '681 and '067 Patents." The court determined that "Nilssen had knowledge of the Stolz Patent and of its materiality. Nilssen failed to disclose the Stolz Patent with the intent to mislead the PTO; and, when he failed to do so, he was not acting in good faith. Nilssen's testimony to the contrary was not credible."

**Response:**     CFLT admits that the quotations in this paragraph from the *OSRAM I* court are accurate, and that it held Nilssen committed inequitable conduct for failure to disclose Stolz during prosecution of the '681 Patent. CFLT denies the allegations in this paragraph to the extent of any suggestion that, under the standards of *Therasense*, that Stolz was material to any claim of the '681 patent and that Nilssen possessed deceptive intent in not disclosing Stolz during its prosecution.

84.     The *OSRAM I* court also held that "Nilssen knew or should have known that this suit was baseless" and ordered the plaintiffs to pay over $5 million dollars in attorneys' fees and costs.

**Response:**     CFLT admits that the quotations in this paragraph from the court are accurate to the extent they pertain to the January 23, 2007 decision awarding fees to Osram in case no. 01-cv-3585, and that plaintiffs in that matter were ordered to pay over $5 million dollars in attorneys' fees and costs. CFLT denies the allegations in this paragraph to the extent of any suggestion that the Federal Circuit affirmed fee-shifting on grounds that the suit was baseless or that fee-shifting could have occurred in view of the standards of *Therasense*.

85.     In *OSRAM II* the Federal Circuit affirmed the inequitable conduct findings of the *OSRAM I* court and held that "[t]he district court found clear and convincing evidence of 'Nilssen's obvious intent to mislead.'"

**Response:**     CFLT admits that the quotations in this paragraph from the *OSRAM II* court are accurate. CFLT denies the allegations in this paragraph to the extent of any suggestion that Nilssen's conduct could be deemed inequitable conduct, or deceptive, under the standards of *Therasense*. CFLT further denies the allegations in this paragraph to the extent of any suggestion that the Federal Circuit found "obvious" the "intent to mislead" found by the district court in *OSRAM I*.

86.     The Federal Circuit held that "we find an inference that Nilssen intended to deceive the PTO not unreasonable."

**Response:**     CFLT admits that the quotations in this paragraph from the *OSRAM II* court are accurate. CFLT denies the allegations in this paragraph to the extent of any suggestion that the quoted passage relates to any patent other than the '681 Patent. CFLT further denies the allegations in this paragraph to the extent of any suggestion that a "not unreasonable" inference of deceptive intent comports with the standards of *Therasense*.

87.     While *OSRAM I* was pending, Nilssen asserted the '680, '681, and '464 Patents against Wal-Mart Stores, Inc. in the Northern District of Illinois.

**Response:**     Admitted.

88.     On March 17, 2008, the *Wal-Mart* court entered summary judgment that the '681, '680, and '464 Patents were all unenforceable for inequitable conduct "for the same reasons that Judge Darrah [in *OSRAM I*] held the other . . . patents in suit unenforceable."

**Response:**     CFLT admits that the quotations in this paragraph from the *Wal-Mart* court are accurate, and that the *Wal-Mart* court held the '464 patent unenforceable on March 17, 2008. CFLT denies that *Wal-Mart* court was stating its own position; it was stating the argument of defendants in that case. For the sake of clarity, the *Wal-Mart* court had, prior to March 17, 2008, held the '681 and '680 Patents unenforceable based on *OSRAM I*. CFLT denies the allegations in this paragraph to the extent of any suggestion that any Asserted Patent could be held unenforceable in accordance with the standards of *Therasense*.

89.     The *Wal-Mart* court further held that the case was exceptional and ordered Nilssen to pay defendants' attorneys' fees.

**Response:**     Admitted.

90.     The *Wal-Mart* court held that the Nilssen's misconduct "was intentional, material and repeated," "[f]ar too many judicial resources have been devoted to this losing litigation," and "[i]f this isn't an exceptional case, this court fails to see what is."

**Response:**     CFLT denies the accuracy of the quotes in this paragraph, and otherwise denies the allegations in this paragraph to the extent of any suggestion that fee-shifting could have occurred in view of the standards of *Therasense*.

91.     The plaintiffs in *Wal-Mart*, who are predecessors-in-interest to CFLT, appealed the *Wal-Mart* court's decision to the Federal Circuit.

**Response:**     CFLT denies the allegations in this paragraph to the extent of any suggestion that a direct appeal of the March 17, 2008 decision granting summary judgment of unenforceability was taken. CFLT admits that the plaintiffs in *Wal-Mart* appealed the November 24, 2008 decision awarding attorneys' fees and that Geo Foundation, Ltd. ("Geo") appealed the November 24, 2009 decision denying its motion for Fed.R.Civ.P. 60(b)(4) relief. CFLT further denies the allegations in this paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents.

92.     On July 30, 2010, during the pendency of the *Wal-Mart* appeal, the plaintiffs in *Wal-Mart*, who are CFLT's predecessors-in-interest, submitted in amicus brief in the *Therasense* appeal.

**Response:**     CFLT admits that Nilssen and Geo submitted *amici* briefs on March 10, 2010 and July 30, 2010 in the *Therasense* appeal. CFLT denies the allegations in this paragraph to the extent of any suggestion that a direct appeal of the March 17, 2008 decision granting summary judgment of unenforceability was taken. CFLT admits that the plaintiffs in *Wal-Mart* appealed the November 24, 2008 decision awarding attorneys' fees and that Geo Foundation, Ltd. ("Geo") appealed the November 24, 2009 decision denying its motion for Fed.R.Civ.P. 60(b)(4) relief. CFLT further denies the allegations in this paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents.

93.     On May 25, 2011, during the pendency of the *Wal-Mart* appeal, the Federal Circuit, sitting *en banc*, rendered its decision in *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011).

**Response:**     CFLT admits that the Federal Circuit, sitting *en banc*, rendered its decision in

*Therasense, Inc. v. Becton, Dickinson & Co. v.*, 649 F.3d 1276 (Fed. Cir. 2011), on May 25, 2011.

CFLT denies the allegations in this paragraph to the extent of any suggestion that a direct appeal

of the March 17, 2008 decision granting summary judgment of unenforceability was taken or

otherwise pending during the *Therasense* appeal. CFLT further denies that the appeal of the *Wal-

Mart* court's November 24, 2008 decision awarding attorneys' fees (an appeal denied on May 6,

2010) was pending on or after the May 25, 2011 *en banc Therasense* decision. CFLT otherwise

admits that Geo appealed the November 24, 2009 decision denying its motion for Fed.R.Civ.P.

60(b)(4) relief, an appeal denied on November 10, 2011, after the May 25, 2011 *Therasense*

decision.

94.     The plaintiffs in *Wal-Mart*, who are predecessors-in-interest to CFLT, had knowledge of the Federal Circuit's *Therasense* decision on or around May 25, 2011.

**Response:**     CFLT admits that the plaintiffs in *Wal-Mart* had knowledge of the Federal Circuit's

*Therasense* decision on or around May 25, 2011. CFLT otherwise denies the allegations in this

paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of

the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents

95.     While the *Wal-Mart* appeal was pending, the Federal Circuit asked the parties to submit briefs on how the *Therasense* decision might impact the appeal.

**Response:**     CFLT denies the allegations in this paragraph to the extent of any suggestion that a direct appeal of the March 17, 2008 decision granting summary judgment of unenforceability was taken or otherwise pending during the *Therasense* appeal. CFLT further denies that the appeal of the *Wal-Mart* court's November 24, 2008 decision awarding attorneys' fees (an appeal denied on May 6, 2010) was pending on or after the May 25, 2011 *en banc Therasense* decision. As to Geo's appeal of the November 24, 2009 decision denying its motion for Fed.R.Civ.P. 60(b)(4) relief, CFLT admits that the Federal Circuit ordered Geo to file a brief "within 21 days of the date of issuance of the mandate in *Therasense* as to how it believes this appeal [no. 2010-1139 (appeal of denial of Geo's Rule 60(b)(4) motion)] should proceed." Otherwise, denied.

96.     The parties to the *Wal-Mart* appeal submitted their respective briefs to the Federal Circuit discussing the *Therasense* decision, and, on November 10, 2011, the Federal Circuit issued a Rule 36 affirmance of the *Wal-Mart* court's findings.

**Response:**     CFLT admits that the parties to the *Wal-Mart* appeal submitted their respective briefs to the Federal Circuit discussing the *Therasense* decision, and, on November 10, 2011, the Federal Circuit issued a Rule 36 affirmance of the *Wal-Mart* court's November 24, 2009 decision denying Geo's motion for Fed.R.Civ.P. 60(b)(4) relief. CFLT denies the allegations in this paragraph to the extent of any suggestion that the *Therasense* decision was addressed in any appeal relating to the March 17, 2008 decision granting summary judgment of unenforceability (no appeal was taken) or the November 24, 2008 decision awarding attorneys' fees (an appeal denied on May 6, 2010).

97.     The '680, '681, and '464 Patents were also subject to reexamination proceedings before the USPTO.

**Response:**     Admitted.

98.     During reexamination proceedings for the '681 Patent, on or around April 17, 2008, the USPTO issued an office action, *inter alia*, rejecting originally issued claim 12 of the '681 patent on multiple grounds.

**Response:**     CFLT denies the allegations in this paragraph to the extent of any suggestion that

claim 12 of the '681 Patent was cancelled as a result of concluded reexamination proceedings, or

after a substantive response to arguments presented by Nilssen on or around June 20, 2008.

Otherwise, admitted.

99.     In view of the fact that various federal courts held that Nilssen had engaged in inequitable conduct related to the '680 and '681 Patents, the USPTO vacated the reexamination proceedings for the '680 and '681 Patents.

**Response:**     CFLT admits that the USPTO vacated the reexamination proceedings for the '680

and '681 Patents because "a final Federal Court holding of invalidity or unenforceable (after all

appeals), is binding on the Office, and, "[u]pon the issuance of a final holding of invalidity or

unenforceability, the claims being examined which are held invalid or unenforceable will be

withdrawn from consideration in the reexamination." Otherwise, denied.

100.     In vacating the reexamination proceeding for the '681 Patent, the USPTO did not reverse or otherwise change the rejections set forth in the April 17, 2008 office action. Nilssen, CFLT's predecessor-in-interest, never sought to overcome or reverse the rejections set forth in the April 17, 2008 office action.

**Response:**     Denied to the extent of any suggestion that vacatur of USPTO proceedings leaves

in place any Examiner action occurring prior to such vacatur, or that an Examiner's final rejection

constitutes any form of final agency action. Also denied to the extent of any suggestion of a duty

(or option) to take action to address ("overcome or reverse") adverse events in a reexamination

proceeding once it has become vacated, and, thus, rendered a nullity. Otherwise, denied.

101.     Instead, Nilssen, CFLT's predecessor-in-interest, acquiesced to the vacating of the reexamination proceedings for the '680 and '681 Patents.

**Response:**     CFLT admits that Nilssen took no action with respect to vacatur of pending

reexamination rejections for claims of the '680 or '681 Patents. Otherwise, denied.

102.     Counterclaim Plaintiffs believed that all Asserted Patents were unenforceable in view of the *OSRAM I*, *OSRAM II*, *Wal-Mart* and *Wal-Mart II* decisions. CFLT and/or its predecessors-in-interest had knowledge of these prior federal court decisions. Counterclaim Plaintiffs thus believed that CFLT and/or its predecessors-in-interest would not assert the Asserted Patents against them.

**Response:**     CFLT lacks knowledge or information sufficient to form a belief as to the truth of whether Counterclaim Plaintiffs believed that all Asserted Patents were unenforceable in view of the *OSRAM I*, *OSRAM II*, *Wal-Mart* and *Wal-Mart II* decisions, and therefore, denies the allegation on that basis. CFLT also lacks knowledge or information sufficient to form a belief as to the truth of whether Counterclaim Plaintiffs believed that any owner of the Asserted Patents would not assert those patents against them, and therefore, denies the allegation on that basis. CFLT admits that CFLT and prior owners of the Asserted Patents had knowledge of the *OSRAM I*, *OSRAM II*, *Wal-Mart* and *Wal-Mart II* decisions, but denies the allegations in this paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents. CFLT denies the allegations in this paragraph to the extent of any suggestion that the '213 or '140 Patents were ever held unenforceable or would be held unenforceable in view of *Therasense*. CFLT further denies the allegations in this paragraph to the extent of any suggestion that the '464, '681 or '680 Patents would be held unenforceable in view of *Therasense*.

103.    Counterclaim Plaintiffs also believed that the '680 and '681 Patents were unenforceable in light of the fact that Nilssen, CFLT's predecessor-in-interest, acquiesced to the USPTO's dismissal of the reexamination proceedings after those patents had been held unenforceable by federal courts. CFLT and/or its predecessors-in-interest had knowledge of Nilssen's acquiescence to the dismissal of the reexamination proceedings. Counterclaim Plaintiffs thus believed that CFLT and/or its predecessors-in-interest would not assert the Asserted Patents against them.

**Response:**    CFLT admits that CFLT and the prior owners of '680 and '681 Patents had

knowledge of the USPTO's vacatur of reexamination proceedings for the '680 and '681 Patents.

CFLT denies the allegations in this paragraph to the extent of any suggestion of a relationship

between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to

the assignment of the Asserted Patents. CFLT lacks knowledge or information sufficient to form

a belief as to the truth of Counterclaim Plaintiffs' purported beliefs, and, therefore, denies such

allegations on that basis. Otherwise, denied.

104.    Counterclaim Plaintiffs continued to sell CFL products after the *OSRAM I*, *OSRAM II*, *Wal-Mart*, and *Wal-Mart II* decisions.

**Response:**    CFLT admits that OSRAM continued to sell CFL products after the *OSRAM I*,

*OSRAM II*, *Wal-Mart*, and *Wal-Mart II* decisions, and that LEDVANCE began selling CFL

products after the *OSRAM I*, *OSRAM II*, *Wal-Mart*, and *Wal-Mart II* decisions. Otherwise, denied.

105.    Counterclaim Plaintiffs continued to sell CFL products after the Federal Circuit's *Therasense* decision.

**Response:**    CFLT admits that OSRAM continued to sell CFL products after the *Therasense*

decision, and that LEDVANCE began selling CFL products after the *Therasense* decision.

Otherwise, denied.

106.    Since the Federal Circuit issued its *Therasense* decision, CFLT and/or its predecessors-in-interest to the Asserted Patents were aware that OSRAM continued to sell CFL products.

**Response:**    CFLT admits that it became aware that OSRAM continued to sell CFL products after the Federal Circuit issued its *Therasense* decision. CFLT denies the allegations in this paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents. CFLT lacks knowledge or information sufficient to form a belief as to the truth of the allegation that any prior owner of the Asserted Patents was aware that OSRAM continued to sell CFL products after the Federal Circuit issued its *Therasense* decision, and, therefore, denies the allegations on that basis.

107.    Since the Federal Circuit issued its *Therasense* decision, CFLT and/or its predecessors-in-interest to the Asserted Patents were aware that LEDVANCE continued to sell CFL products.

**Response:**    CFLT admits that it became aware that LEDVANCE began to sell CFL products after the Federal Circuit issued its *Therasense* decision. CFLT denies the allegations in this paragraph to the extent of any suggestion of a relationship between CFLT and the prior owner of the Asserted Patents existing beyond the contract related to the assignment of the Asserted Patents. CFLT lacks knowledge or information sufficient to form a belief as to the truth of the allegation that any prior owner of the Asserted Patents was aware that LEDVANCE began and/or continued to sell CFL products after the Federal Circuit issued its *Therasense* decision, and, therefore, denies the allegations on that basis.

108.    Despite having knowledge of the *Therasense* decision and the fact that OSRAM and LEDVANCE continued to sell CFL products, CFLT and/or its predecessors-in-interest did not file a post-*Therasense* lawsuit alleging Counterclaim Plaintiffs' infringement of the Asserted Patents until the filing of the Complaint in this action.

**Response:**    CFLT denies knowledge of the *Therasense* decision until CFLT's formation in 2018. CFLT otherwise incorporates by reference its responses to paragraphs 106 and 107 herein.

109.    From the time that CFLT was purportedly assigned the Asserted Patents until the filing of the Complaint, CFLT was aware that OSRAM and/or LEDVANCE continued to sell CFL products.

**Response:**    Admitted.

110.    Some of the conduct during prosecution that was adjudged inequitable in the above cases with respect to the '464, '680, and '681 Patents is also present in the prosecution history of other Asserted Patents.

**Response:**    Admitted.

111.    For example, Nilssen submitted signed declarations to the USPTO falsely claiming that the '680 Patent, the '681 Patent, the '213 Patent, and the '140 Patent were all continuations-in-part of Application No. 05/890,586, filed on March 20, 1978. *See, e.g.*, D.I 15, Ex. 3 at 64-65; D.I. 16, Ex. 4 at 133-134. The *OSRAM I*, *OSRAM II*, *Wal-Mart*, and *Wal-Mart II* courts found that these patents were not entitled to this priority date.

**Response:**    CFLT admits that documents within the file histories for the '680, '681, '213 and '140 Patents recite a related application ancestry that includes Application No. 05/890,586. Denied to the extent of any suggestion that Nilssen asserted, during prosecution of any of the foregoing patents, an effective filing date of March 20, 1978. For example, during prosecution of the application for the '681 Patent, the Examiner rejected pending application claims over U.S. Patent No. 4,277,728 to Stevens ("Stevens"), a patent having a filing date of May 8, 1978 and reciting no earlier related applications. The priority date of Stevens (May 8, 1978) post-dates the March 20, 1978 application date recited by Nilssen, yet Nilssen did not argue that Stevens did not have prior art status. Otherwise, denied.

112.    As evidenced by the previous factual findings in *OSRAM I*, Nilssen's false declarations were intentional. Upon information and belief, Nilssen sent correspondence to third

parties describing his likely inability to have the Asserted Patents granted based on their priority date and existing prior art. Soon after, Nilssen submitted his first false declaration with the false priority claims.

**Response:**     Denied.

113.     The intentionally false declarations filed by Nilssen were material to the USPTO's determination of patentability and its grant of the Asserted Patents. By falsely claiming priority to 1978, the applicant limited the prior art references that the examiner could use during prosecution of the Asserted Patents. Indeed, as a non-limiting example, the reexamination proceedings for the '680 Patent that resulted in a final determination of unpatentability relied on a reference with a 1979 priority date (the Stolz Patent, discussed above). This reference would not have been available during prosecution based on Nilssen's false priority claim.

**Response:**     Denied.

114.     Further, the Federal Circuit held in *Therasense* that "[a]lthough but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in cases of affirmative egregious misconduct. … '[T]here is no room to argue that submission of false affidavits is not material.'" *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (quoting *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983)).

**Response:**     CFLT admits the accuracy of quotations in this paragraph. Otherwise, this

paragraph contains conclusions of law to which no response is required.

115.     The CFL products accused of infringement in this case are substantially similar to those CFL products accused in *OSRAM I*.

**Response:**     CFLT lacks knowledge or information sufficient to form a belief as to the truth of

whether the CFL products accused of infringement in this case are substantially similar to those

CFL products accused in *OSRAM I*, and, therefore, denies the allegation on that basis.

116.     The CFL products accused of infringement in this case are substantially similar to those CFL products accused in *OSRAM III*.

**Response:**     CFLT lacks knowledge or information sufficient to form a belief as to the truth of

whether the CFL products accused of infringement in this case are substantially similar to those

CFL products accused in *OSRAM III*, and, therefore, denies the allegation on that basis.

117.    Plaintiff's infringement theory is not substantially different in this case compared to the infringement theories in *OSRAM I.*

**Response:**    Denied to the extent that the '464, '140 and '213 Patents were not asserted in *OSRAM I.* CFLT otherwise lacks knowledge or information sufficient to form a belief as to the truth of whether CFLT's infringement theory is not substantially different in this case compared to the infringement theories in *OSRAM I*, and, therefore, denies the allegation on that basis.

118.    Plaintiff's infringement theory is not substantially different in this case compared to the infringement theories in *OSRAM III.*

**Response:**    Denied to the extent that the '213, '681 and '680 Patents were not asserted in *OSRAM III.* CFLT otherwise lacks knowledge or information sufficient to form a belief as to the truth of whether CFLT's infringement theory is not substantially different in this case compared to the infringement theories in *OSRAM III*, and, therefore, denies the allegation on that basis.

119.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaim Plaintiffs are entitled to judgment from this Court that the '213 Patent, the '464 Patent, the '140 Patent, the '681 Patent, and the '680 Patent are unenforceable for inequitable conduct.

**Response:**    Denied.


Dated: September 24, 2019                Respectfully submitted,

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
Phillips, Goldman, McLaughlin & Hall, P.A.
1200 N. Broom Street
Wilmington, DE 19806
Phone: (302) 655-4200
Fax: (302) 655-4210
jcp@pgmhlaw.com
mch@pgmhlaw.com

*Attorneys for Plaintiff CFL Technologies, LLC*